ATZINGEN-WHITEHOUSE DAIRY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83717. Filed April 27, 1961.

*Martin D. Cohen, Esq.*, for the petitioner.
*Sheldon Seevak, Esq.*, for the respondent.

174

OPINION.

RAUM, *Judge:* (1) We have concluded on the evidence that the actual prices at which petitioner sold its products were the invoice prices minus the discounts agreed upon between petitioner and its customers. Accordingly, the problem before us is not whether such discounts are deductible as "ordinary and necessary" business expenses from gross income in arriving at net income, cf. *Tank Truck Rentals* v. *Commissioner*, 356 U.S. 30; rather it is whether the discounts must be taken into account in determining the amount of gross income chargeable to petitioner in the first instance. Cf. *Lela Sullenger*, 11 T.C. 1076, acq. 1952-2 C.B. 3. We hold, following *Pittsburgh Milk Co.*, 26 T.C. 707, which involved a virtually identical situation, that in computing gross income the amount of petitioner's sales must be based upon its actual prices and not upon the theoretical legal minimum prices. The present case is closer to the *Pittsburgh Milk Co.* case than to *Boyle, Flagg & Seaman, Inc.*, 25 T.C. 43, relied upon by respondent.

Respondent urges that the decision in the *Pittsburgh Milk Co.* case be reconsidered. He made a similar contention in two other cases, in which the holding in the *Pittsburgh Milk Co.* case was reaffirmed and followed in memorandum opinions by this Court.[3] Moreover, the theory of the *Pittsburgh Milk Co.* case has been applied, at the respondent's urging, in *Tri-State Beverage Distributors, Inc.*, 27 T.C. 1026, 1030-1031. We are not disposed to reopen the question.

(2) In connection with the first issue decided above, the Commissioner made adjustments in the amounts of $940.65 and $2,998.52 for the years 1955 and 1956, respectively, on the ground that there was no substantiation for rebates to that extent. In general petitioner obtained receipts from its customers for cash rebates which had been made, and the Commissioner's determination treated petitioner as having made cash rebates only in the amounts supported by such receipts. However, there was evidence that some customers refused to sign receipts, and on the basis of such evidence as we have before us we have found as a fact that petitioner made cash rebates of $575 in 1955 and $2,750 in 1956 to customers who refused to give it any receipts. Our holding with respect to these cash rebates is the same as

---

[3] *Rosedale Dairy Co.*, T.C. Memo. 1957-243; *Harmony Dairy Co.*, T.C. Memo. 1960-109.

that heretofore made with respect to rebates which respondent was able to substantiate from petitioner's records.

(3) *Payment of $7,000 to OMI.*—Petitioner contends that its payment of $7,000 to OMI in 1955 was not a fine or penalty the allowance of which would frustrate public policy, and that it is deductible as an ordinary and necessary business expense. It urges that the ordinary nature of the payment is established by OMI statistics showing that OMI held 823 informal hearings respecting minimum milk price violations all of which resulted in adjustments under N.J. Stat. Ann., sec. 4:12A–43, and that the payment was necessary because, if it had not been made, petitioner would have been subjected to a more severe sanction, the revocation of its license, without which it could not carry on its business.

In *O'Dowd's Dairy* v. *Hoffman*, 52 N.J. Super. 135, 145 A. 2d 40, the Superior Court of New Jersey, Appellate Division, held that the director of OMI had no power to impose a penalty under N.J. Stat. Ann., sec. 4:12A–39,[4] a section which is not involved in the instant proceeding. In the course of its opinion in that case, the court pointed out that the director did have the following powers to enforce the milk control laws (145 A. 2d at 43–44):

He has drastic powers with which to enforce the law—far more compelling than penalties under section 39. He may suspend or revoke a license. N.J.S.A. 4:12A–35. He may seize products produced or handled in violation of the law (N.J.S.A. 4:12A–39), and he may proceed in the Superior Court against chronic violators by injunction. N.J.S.A. 4:12A–44. On the other hand, he may informally adjust violations (N.J.S.A. 4:12A–43), in which case he may collect the sum the violator agrees to pay. * * *

It is apparent that the milk control laws of New Jersey gave the director several means of enforcing them and discouraging violations. In N.J. Stat. Ann., sec. 4:12A–43, he was given the power to hold informal hearings and "adjust" violations with the person accused thereof, as was done in this case, "for such amounts as may in his discretion, be proper under the circumstances." The adjustment of $7,000 which he determined and petitioner paid in 1955 was for willful violations and is not comparable to the innocent violations of the Emergency Price Control Act considered in *Jerry Rossman Corpora-*

---

[4] 4:12A–39. *Violations of act; penalty; seizure and sale*

Any person who shall violate any of the provisions of this act or the orders, rules and regulations of the director as adopted from time to time shall be deemed guilty of a violation of the provisions of this act and shall pay a penalty of not more than fifty dollars ($50.00) for the first offense and not more than two hundred dollars ($200.00) for the second, or each subsequent offense, and such penalty when collected shall be paid to the Treasurer of the State of New Jersey and become a part of the general fund of the State of New Jersey. Any milk as herein defined which is the subject of the violation of this act or the orders, rules and regulations of the director, may be seized, and any part thereof may be sold as the director or court may direct; the proceeds from such sale to be paid to the Treasurer of the State of New Jersey to abide the further order of the director or court, and if no such order is made then to become a part of the general fund of the State of New Jersey. L. 1941, c. 274, p. 732, § 39.

*tion* v. *Commissioner*, 175 F. 2d 711 (C.A. 2), relied upon by petitioner. Petitioner's right to the deduction claimed for the $7,000 payment depends upon whether the allowance of such a deduction would frustrate the enforcement of the milk control laws by reducing the "sting" of the adjustment made for violating them. *Tank Truck Rentals, Inc.* v. *Commissioner*, 356 U.S. 30, 35. We think that it would and, in the circumstances, respondent's disallowance of the claimed deduction should be sustained. No useful purpose would be served by a verbal inquiry into whether the adjustment may be called a "fine" or "penalty." The label is immaterial. Plainly, it was intended as a sanction calculated to induce compliance with New Jersey law and was punitive in character. The payment of the amount in controversy was not an "ordinary and necessary" business expense.

(4) *$6,000 legal fee.*—In 1956 petitioner paid $6,000 to an attorney for legal services. In its return for that year petitioner claimed a deduction for this payment as an ordinary and necessary business expense. Respondent disallowed the claimed deduction on the ground that the payment was for legal expenses for services rendered in connection with the purchase by petitioner of the shares of its stock owned by William and Walter Von Atzingen. Petitioner has not proved that respondent erred in this determination. On the contrary, the evidence produced convinces us that the respondent correctly determined that the $6,000 payment was for legal services rendered in connection with the purchase by petitioner of shares of its stock. That payment is a capital expenditure which should have been treated as part of the cost of the stock purchased. It is not deductible as an ordinary and necessary business expense. The fact that the purchase of the stock was motivated by a desire to eliminate friction between the Von Atzingens and Zima is immaterial. Certainly, the cost of the stock itself was a capital expenditure rather than a deductible expense, and the accompanying legal fee must be similarly classified.

(5) *Entertainment expenses.*—In its 1956 return petitioner claimed a deduction of $1,500 for miscellaneous expenses, which was disallowed by the respondent. During 1956, after Labor Day, petitioner made three payments to Ernest Zima which totaled $1,500. At that time Zima owned substantially all the stock of petitioner. He testified that he made expenditures from his own funds for entertainment of petitioner's customers and that the $1,500 received from petitioner was to reimburse him therefor. He kept no records showing such expenditures and had no receipts to evidence them. Although he testified that he entertained many of petitioner's customers, he identified only one by name. According to his testimony, the entertainment consisted of buying customers drinks, taking them out to dinner, and spending money at customers' establishments in order to promote business. His testimony as to the nature and amount of these expenditures was

vague and unsatisfactory. However, we think that some part of the amount in controversy may have been spent for entertaining customers in circumstances that were proximately related to petitioner's business. Applying the familiar rule of *Cohan* v. *Commissioner*, 39 F. 2d 540, 544 (C.A. 2), and "bearing heavily" upon petitioner for its failure to furnish adequate proof, we have found as a fact, and hold, that $150 of the $1,500 paid to Zima during 1956 represented reimbursement for deductible amounts which he expended during that year to entertain petitioner's customers.

*Decision will be entered under Rule 50.*