FREDERICK WEISMAN COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 23934-89.     Filed November 20, 1991.

*Donald C. Alexander, Duane H. Pellervo,* and *Michael Quigley,* for the petitioner.

*Richard H. Gannon, Ruth M. Spadaro,* and *Eugene J. Wien,* for the respondent.

OPINION

PARKER, *Judge:* Respondent determined the following deficiencies in petitioner's Federal corporate income taxes:

| TYE | Deficiency |
|---|---|
| Aug. 31, 1983 | $1,013,859 |
| Aug. 31, 1984 | 1,127,357 |
| Aug. 31, 1985 | 1,093,266 |

Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the taxable years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether the amount paid by petitioner in redemption of its stock, when such redemption is brought about by an outside force and is necessary to the survival of petitioner's business, is an ordinary and necessary expense deductible under section 162(a) or a nondeductible capital expenditure.

This case is before the Court on respondent's motion for judgment on the pleadings pursuant to Rule 120(a). For purposes of this motion, respondent assumes as true the factual allegations set forth in the petition. Respondent does not, however, accept the legal conclusions petitioner draws from these deemed-true facts.

Petitioner is a Delaware corporation with its principal place of business in Glen Burnie, Maryland. Petitioner's primary business is the operation of a Toyota distributorship for the mid-Atlantic region of the United States. It operates through Mid-Atlantic Toyota Distributors, Inc. (hereinafter MAT), its wholly owned subsidiary.

On March 17, 1970, MAT entered into an agreement with Toyota Motor Sales, U.S.A., Inc. (hereinafter TMS). This agreement authorized MAT to distribute new Toyota motor vehicles and other products in the mid-Atlantic region for a period of 2 years. On March 17, 1972, TMS agreed to extend the term of the agreement for 6 months.

On October 11, 1972, MAT entered into an agreement with TMS which authorized petitioner to continue to distribute new Toyota motor vehicles and other products in the mid-Atlantic region for a period of 5 years. On October 7, 1977, MAT entered into an agreement with TMS authorizing MAT to continue distribution for a further period of 5 years. By its terms this agreement terminated on October 11, 1982.

On August 27, 1982, petitioner and TMS entered into an agreement (hereinafter the 1982 agreement) authorizing petitioner to continue distribution for a period of 5 years, beginning on October 12, 1982. Petitioner assigned the distributorship to MAT. By its terms, the 1982 agreement expired on October 11, 1987.

The survival of petitioner's business depended upon its entering into the 1982 agreement with TMS. As a condition to entering into the 1982 agreement, TMS demanded that petitioner redeem the shares of all of its shareholders other than Frederick R. Weisman (Weisman). TMS was able to impose this requirement because of its superior bargaining position.

Weisman was the majority shareholder and sole director of petitioner. The stock that was redeemed was held by Marcia S. Weisman (Marcia), Richard L. Weisman (Richard), and Lerand, Inc.

Marcia held 5,000 shares of class A voting common stock and 31,365 shares of class B nonvoting stock. On or about July 31, 1982, petitioner redeemed all of Marcia's shares for $1 million cash, title to certain works of art owned by petitioner valued at $540,783, and a secured promissory note in the principal amount of $5,870,000, payable without interest on or before January 3, 1983. Richard held 8,346 shares of class B nonvoting stock. On or about June 25, 1982, petitioner redeemed Richard's shares for $1,415,899 in cash. Lerand, Inc., held 18,835 shares of class B nonvoting stock. On or about June 25, 1982, petitioner redeemed Lerand, Inc.'s shares for $3,195,358 in cash. Weisman has been the sole shareholder of petitioner since the 1982 stock redemption.

The total purchase price for the redeemed shares was $12,022,040. Petitioner also incurred $189,335 in legal expenses attributable to the stock redemption. Petitioner deducted these amounts ratably over the 5-year term of the 1982 agreement. Respondent challenges those deductions, contending that all amounts paid in connection with petitioner's redemption of its stock are not deductible because of section 311(a), and are capital expenditures not deductible or amortizable under any provision of the Code.

The issue is whether the costs (purchase price and expenses) incurred in connection with a corporation's redemption of its own stock are deductible under section 162(a) or are amortizable despite the section 311(a) prohibition against the recognition of gain or loss on stock redemptions. Section 311(a) provides:

SEC. 311(a). GENERAL RULE.—Except as provided in subsection (b), * * * no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of—

(1) its stock (or rights to acquire its stock), or

(2) property.

Section 317 provides:

SEC. 317(a). PROPERTY.—For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock).

(b) REDEMPTION OF STOCK.—For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.

Petitioner relies on the Fifth Circuit's opinion in *Five Star Mfg. Co. v. Commissioner,* 355 F.2d 724 (5th Cir. 1966), revg. 40 T.C. 379 (1963), to support the proposition that stock redemption costs (purchase price and expenses) incurred in the face of an outside threat to the survival of the corporation are deductible as ordinary and necessary business expenses under section 162(a). Petitioner acknowledges that we are not bound by that Fifth Circuit opinion since the case before us is appealable to the U.S. Court of Appeals for the Fourth Circuit. Under the *Golsen* rule, we are not bound by the Fifth Circuit's holding in *Five Star. Golsen v. Commissioner,* 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). However, petitioner asks us to follow the Fifth Circuit's opinion. Respondent, for purposes of his motion for judgment on the pleadings, has accepted as true a statement of facts that brings the instant case squarely within the facts of *Five Star.* Thus, respondent asks us to decline to follow the Fifth Circuit's *Five Star* opinion and to adhere to our own opinion that such costs are nondeductible capital expenditures.

*Five Star Mfg. Co. v. Commissioner, supra,* addressed the deductibility of the amount paid by a corporation to terminate the interest of a 50-percent shareholder. W.S. Kincade and H.E. Smith, Jr., each owned 50 percent of the Five Star stock. Andrew Freeman held a patent on an automobile heater and through a patent license agreement

had granted Kincade and Smith the exclusive right to manufacture, use, and sell the heater in the United States. Kincade and Smith in turn had transferred the right to manufacture the heater to Five Star. Smith thereafter borrowed substantial amounts of money from Five Star. In 1954, Freeman brought suit against the corporation and its two shareholders for nonpayment of royalties and attached most of Five Star's assets. Kincade paid part of the judgment and assured Freeman that the balance would be satisfied. As a result of subsequent litigation to recover amounts owed to Five Star by Smith, Five Star obtained a net money judgment of $56,715.43 against Smith. Five Star "purchased" Smith's stock for $56,000 at a judicial sale.[1] *Five Star Mfg. Co. v. Commissioner,* 355 F.2d at 724-725.

At the trial level in *Five Star Mfg. Co. v. Commissioner,* 40 T.C. 379, 391 (1963), this Court had found that "any benefit resulting from the purchase of the stock would extend over an indefinite number of years" and hence denied Five Star a deduction under section 162 for an ordinary and necessary business expense. We prefaced our opinion with the following:

Apparently the parties are agreed that the instant case is not affected by section 311 of the Internal Revenue Code of 1954, which provides generally that no gain or loss shall be recognized to a corporation on distributions with respect to its stock. The regulations under section 311 make it clear that the section does not apply to transactions between a corporation and a shareholder in his capacity as a debtor. [*Five Star Mfg. Co. v. Commissioner,* 40 T.C. at 387. Fn. ref. omitted.]

The Tax Court footnoted section 1.311-1(e), Income Tax Regs., which provides:

(1) Section 311 is limited to distributions which are made by reason of the corporation-stockholder relationship. Section 311 does not apply to transactions between a corporation and a shareholder in his capacity as debtor, creditor, employee, or vendee, where the fact that such debtor, creditor, employee, or vendee is a shareholder is incidental to the transaction. Thus, if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to

---

[1]The $56,000 "payment" for the stock was credited against Five Star's judgment against Smith, and no money actually changed hands. In effect, Smith paid $56,000 of his debt to Five Star with his stock, which stock, the Tax Court had found, had a fair market value of at least $56,000. *Five Star Mfg. Co. v. Commissioner,* 40 T.C. 379, 386 (1963), revd. and remanded 355 F.2d 724 (5th Cir. 1966).

it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. [*Five Star Mfg. Co. v. Commissioner,* 40 T.C. at 387 n.5.[2]]

At the appellate level the Fifth Circuit's opinion made no reference to section 311. The Fifth Circuit concerned itself only with whether the payment was an ordinary and necessary expense or a capital expenditure. In light of the fact that, by the time of the judicial sale and Five Star's purchase (redemption) of its stock, Smith had become a judgment debtor with respect to the corporation, we note that section 311 was never an issue in *Five Star* before either the Tax Court or the Fifth Circuit. Thus, the opinions in *Five Star* do not address section 311 or the situation where a corporation redeems stock of its shareholders in their capacity as shareholders.

In this case respondent argues that section 311(a) applies to the distribution, thereby precluding deductibility of the costs of redemption. Petitioner argues that section 311(a) applies only to gain or loss and does not preclude deductibility of these costs. Our initial inquiry will focus on whether or not the costs of a stock redemption would be deductible in the absence of section 311(a).

*Five Star Mfg. Co. v. Commissioner,* 355 F.2d at 727, concluded that the payment for Smith's shares was an ordinary and necessary business expense under section 162. The opinion of the Fifth Circuit centered on the likelihood that Five Star Manufacturing Co. would not have survived absent payment of the amounts at issue.

As intimated by the district court [*Smith v. Kincade,* unreported], the future of the company, at the time of the sale, depended upon Kincade, his credit, his know-how, energy and business ability. It also depended upon Freeman's willingness to allow Five Star to continue in business under Kincade's management and backing but only if Smith was out of the picture. Had Smith remained as the owner of fifty percent of the stock of Five Star, its liquidation was inevitable, and in the event of its liquidation there could have been no realization for stockholders. With the removal of Smith, with the management and credit of Kincade, and with the cooperation of Freeman, there was a chance for survival. [*Five Star Mfg. Co. v. Commissioner,* 355 F.2d at 727.]

---

[2]See also *Five Star Mfg. Co. v. Commissioner,* action on decision, 1966-155 (Mar. 25, 1966) ("In the development of [*Five Star*] the Commissioner and the taxpayer agreed that section 311 of the 1954 Code did not govern the transaction in the instant case because of the exception provided in Regs., section 1.311-1(e)(1).").

Although stating that the resolution of whether the cost of repurchasing the stock was an ordinary expense depended upon the nature of the transaction, the Fifth Circuit in effect applied a principal purpose or business purpose test.[3] The Fifth Circuit further stated that "It can scarcely be held that the payment to Smith was for the acquisition of a capital asset, but rather one which would permit Five Star again to use assets for income production by freeing its management from unwarranted fetters." *Five Star Mfg. Co. v. Commissioner*, 355 F.2d at 727. The Fifth Circuit rejected the nature of the transaction (the purchase of stock) and concentrated instead on the principal purpose or business reason for acquiring the stock.

Subsequent cases have severely limited the application of *Five Star*, holding *Five Star's* allowance of a current deduction for an otherwise capital expenditure to the situation in which the survival of the corporate business is at stake. *Markham & Brown, Inc. v. United States*, 648 F.2d 1043, 1045 (5th Cir. 1981); *Richmond, Fredericksburg & Potomac Railroad v. Commissioner*, 528 F.2d 917, 920 (4th Cir. 1975), affg. 62 T.C. 174 (1974) (need to show "dire necessity"); *Jim Walter Corp. v. United States*, 498 F.2d 631, 639 (5th Cir. 1974) (*Five Star* "limited to situations where a payment to purchase a capital asset, though capital in nature, is necessary to the taxpayer's survival."); *H.&G. Industries, Inc. v. Commissioner*, 495 F.2d 653, 657 (3d Cir. 1974), affg. 60 T.C. 163 (1973); *Harder Services, Inc. v. Commissioner*, 67 T.C. 585, 596 (1976), affd. without published opinion 573 F.2d 1290 (2d Cir. 1977); *Stokely-Van Camp, Inc. v. United States*, 21 Cl. Ct. 731, 754 (1990).

The Fourth Circuit addressed the *Five Star* issue in *Richmond, Fredericksburg & Potomac Railroad v. Commissioner*, 528 F.2d 917 (4th Cir. 1975). In that case, the

---

[3]The Fifth Circuit cited as illustrative *Hogg v. Allen*, 105 F. Supp. 12 (M.D. Ga. 1952), affd. sub nom. *Edwards v. Hogg*, 214 F.2d 640 (5th Cir. 1954), involving a loss on the sale of stock purchased by a partnership in a wholesale whiskey business "for the purpose of acquiring whiskey procurement rights attached to the stock." 355 F.2d at 727. The Fifth Circuit went on to state that "In a similar situation the Tax Court has held that the loss resulting from the purchase of debentures of a supplier made to insure preferential treatment was a deductible expense. *Tulane Hardware Lumber Co. v. Commissioner*, 24 T.C. 1146." *Five Star Mfg. Co. v. Commissioner*, 355 F.2d at 727. Our *Tulane Hardware* case involved an inquiry as to whether stock was acquired for an investment purpose or a business purpose (to acquire and maintain a source of supply of plywood). That principal purpose or business purpose test has since been rejected by the Supreme Court.

railroad had issued hybrid securities (guaranteed stock) in the latter half of the nineteenth century. In 1962, 1963, and 1964, the railroad repurchased some of the guaranteed stock at a premium. It deducted this amount on its Federal income tax return as a bond repurchase premium. The railroad contended that even if the guaranteed stock were treated as equity, it was entitled to deduct the premium under section 162 as an ordinary and necessary business expense. "It assert[ed] that the repurchases facilitated its business by removing restrictions on the transferability of corporate property. If a repurchase premium can ever be deducted upon that theory, however, there must be a showing of dire necessity." *Richmond, Fredericksburg & Potomac Railroad,* 528 F.2d at 920 (citing *Jim Walter Corp. v. United States,* 498 F.2d 631 (5th Cir. 1974); *H.&G. Industries v. Commissioner,* 495 F.2d 653 (3d Cir. 1974)).

In *Harder Services, Inc. v. Commissioner, supra,* this Court addressed the issue of deductibility of amounts paid by a corporation for the repurchase of its shares, where the repurchase was necessary to relieve the corporation of an onerous stock option agreement. We found that the repurchase was a capital transaction under section 311 and did not give rise to a deduction under section 162. *Harder Services, Inc. v. Commissioner,* 67 T.C. at 598. *Five Star* was distinguished on factual grounds. 67 T.C. at 596.

Because in *Harder Services* we were able to distinguish *Five Star* on factual grounds, we did not reach the issue of whether, faced with the facts of *Five Star,* we would follow the Fifth Circuit's opinion.

The Fifth Circuit, this Court, and other courts have up to this point been able to distinguish *Five Star* on a factual basis. The parties have not cited and we have not found any case actually following the Fifth Circuit's *Five Star* opinion; on the other hand, that holding has never been overruled. In a recent Memorandum Opinion of this Court, the current state of the law in this area was thoroughly explored. *Proskauer v. Commissioner,* T.C. Memo. 1983-395. Acknowledging the general rule that the purchase of stock is a capital transaction, the *Proskauer* opinion discussed in

detail the purported *Five Star* exception, and that discussion warrants repeating here:

The *Five Star* case, however, was decided in 1966, under the factual "primary purpose" test which, at the time, was in frequent, if somewhat haphazard, use by the courts in deciding whether an expenditure was to be considered capital in nature or an ordinary and necessary business expense. In *Woodward v. Commissioner, supra,* the Supreme Court, acknowledging the confused state of the law in this area, see *Woodward,* 397 U.S. at 576, rejected the "primary purpose" test, and substituted therefor a standard which looks to the fundamental nature of the transaction, rather than the reasons for entering into it, as being determinative of the tax treatment to be afforded. The "primary purpose" test no longer correctly applies the law. *Anchor Coupling Company v. United States,* 427 F.2d 429, 431 (7th Cir. 1970).

Recognizing the important change in the law wrought by the Supreme Court in 1970 in *Woodward v. Commissioner, supra,* the Fifth Circuit, author of the opinion in *Five Star,* has limited that case to its own facts and to those extraordinary situations where, as in *Five Star,* the purchasing corporation was faced with extinction, absent the purchase in question. *Jim Walter Corp. v. United States,* 498 F.2d 631, 639 (5th Cir. 1974); *Markham & Brown, Inc. v. United States,* 648 F.2d 1043 (5th Cir. 1981). The Court of Appeals for the Third Circuit has taken the same restrictive approach. *H.&G. Industries, Inc. v. Commissioner,* 495 F.2d 653 (3d Cir. 1974), affg. 60 T.C. 163 (1973).

This Court has followed the rationale of *Jim Walter, Markham & Brown* and *H.&G. Industries.* In *Harder Services, Inc. v. Commissioner, supra,* the taxpayer corporation repurchased an employee's stock as part of terminating his employment, all of which was done in order to extricate the taxpayer from an unfavorable financial and management situation. The taxpayer, relying on the *Five Star* case, claimed the right to an ordinary deduction under section 162(a) with respect to the amounts paid to redeem its stock. This Court, in line with the above cases, refused to extend the attenuated authority of the *Five Star* case beyond the extreme situation where corporate survival was at stake, and held that the expenditure was capital in nature.

In our opinion, the present case falls within the rationale of *Harder Services* and requires the same conclusion.

[*Proskauer v. Commissioner,* 46 T.C.M. 679, 684-685, 52 P-H Memo T.C. par. 83,395, at 1619.]

The *Proskauer* opinion went on to conclude that "whatever life may be left in the narrow exception to the general rule" the taxpayers there had failed to bring themselves within it. 46 T.C.M. at 685; 52 P-H Memo T.C. par. 83,395, at 1620.

We are now faced with the issue of whether to apply *Five Star* to a redemption that is brought about by an outside force and is necessary to the survival of the corporation. In

other words, the present case cannot be distinguished from *Five Star* on its facts. In light of the *Gilmore/Hilton Hotels/Woodward/Arkansas Best* line of Supreme Court cases, we respectfully decline to follow the Fifth Circuit's *Five Star* opinion. *United States v. Gilmore,* 372 U.S. 39 (1963); *Woodward v. Commissioner,* 397 U.S. 572 (1970); *United States v. Hilton Hotels Corp.,* 397 U.S. 580 (1970); *Arkansas Best Corp. v. Commissioner,* 485 U.S. 212 (1988).

In *United States v. Gilmore,* 372 U.S. at 49, the Supreme Court held that in determining deductibility of legal expenses, one must look to the origin and nature of the claim with respect to which the expense was incurred. "If an expense is capital, it cannot be deducted as 'ordinary and necessary'." *Woodward v. Commissioner,* 397 U.S. at 575. A stock redemption is the reacquisition of a corporation's stock from its shareholders in exchange for property. Sec. 317(b). The stock of petitioner is a capital asset. Sec. 1221; *Arkansas Best Corp. v. Commissioner,* 485 U.S. at 222-223. "It has long been recognized, as a general matter, that costs incurred in the acquisition or disposition of a capital asset are to be treated as capital expenditures." *Woodward v. Commissioner,* 397 U.S. at 575. The cost of the redeemed stock is ·a capital expenditure, not a deductible expense. *Atzingen-Whitehouse Dairy, Inc. v. Commissioner,* 36 T.C. 173, 183 (1961). See also *Woodward v. Commissioner,* 397 U.S. at 579 n.8 ("wherever a capital asset is transferred to a new owner in exchange for value either agreed upon or determined by law to be a fair quid pro quo, the payment itself is a capital expenditure."); *Stokely-Van Camp, Inc. v. United States,* 21 Cl. Ct. 731, 753 (1990) ("Typically, a corporation's purchase of its own stock is a capital transaction, and no deduction is allowable for the purchase amount, or expenses associated with the purchase.").

The flaw in the *Five Star* exception is that it requires the trier of fact to look to the primary purpose of the transaction in order to determine if an otherwise capital expenditure can be treated as an ordinary and necessary business expense under section 162. While the Fifth Circuit purported to look to the nature of the transaction, its ultimate focus was on the purpose or business reasons for which the stock was purchased. See *supra* note 3. The

Supreme Court in *Woodward* and *Hilton Hotels*, and more recently in *Arkansas Best Corp.*, has made it clear that this line of inquiry is inappropriate.[4] Finding the "primary purpose" test to be "uncertain and difficult," the Supreme Court rejected that test in favor of looking to the "origin and nature" of the transaction. *Woodward v. Commissioner*, 397 U.S. at 577. The Court noted that any test relying on the purpose of the transaction "would encourage resort to formalisms and artificial distinctions." *Woodward v. Commissioner*, 397 U.S. at 577. Thus, the only acceptable inquiry is whether the transaction in question is a capital one. Recognizing that "stock is most naturally viewed as a capital asset," the Supreme Court recently reaffirmed that a taxpayer's motivation or business purpose for purchasing an asset is irrelevant in determining that the asset (i.e., stock) is a capital asset. *Arkansas Best Corp. v. Commissioner*, 485 U.S. at 223. To the extent that the Fifth Circuit's *Five Star* exception apparently transmutes the purchase price and expenses of a corporation's acquiring its own stock into ordinary and necessary expenses deductible under section 162, we think it has been sapped of any remaining vitality by the Supreme Court's *Woodward*, *Hilton Hotels*, and *Arkansas Best* line of cases. Accordingly, we respectfully decline to follow the Fifth Circuit's *Five Star* opinion in this case, and we hold to our *Five Star* rationale that redemption of stock is a nondeductible capital transaction. The reasons behind the redemption cannot transform the transaction into one of a noncapital nature. *Arkansas Best Corp. v. Commissioner, supra.*

We also reject petitioner's argument that section 162(k), enacted in 1986 to expressly disallow any deduction for stock redemption expenses, somehow supports the deductibility of its costs of this redemption under prior law. Section 162(k) provides:

SEC. 162(k). STOCK REDEMPTION EXPENSES.—

    (1) IN GENERAL.—Except as provided in paragraph (2), no deduction otherwise allowable shall be allowed under this chapter for any amount

---

[4] As *Arkansas Best Corp. v. Commissioner*, 485 U.S. 212 (1988), has made clear, such an inquiry is appropriate only to determine if a particular asset comes within the inventory exception to the statutory definition of a capital asset. The stock purchase in this case was clearly not a surrogate for petitioner's inventory items.

paid or incurred by a corporation in connection with the redemption of its stock.

(2) EXCEPTIONS.—Paragraph (1) shall not apply to—

(A) CERTAIN SPECIFIC DEDUCTIONS.—Any—

(i) deduction allowable under section 163 (relating to interest), or

(ii) deduction for dividends paid (within the meaning of section 561).

(B) STOCK OF CERTAIN REGULATED INVESTMENT COMPANIES.—Any amount paid or incurred in connection with the redemption of any stock in a regulated investment company which issues only stock which is redeemable upon the demand of the shareholder.

This provision has no effect on our interpretation of the case law discussed above. The legislative history of section 162(k) makes it clear that the Congress was not espousing any view on the then-current state of the law. The report of the House Ways and Means Committee states, "the committee does not intend to create any inference that the payments covered by this section would be deductible under present law." H. Rept. 99-426 (1985), 1986-3 C.B. (Vol. 2) 1, 249. The report of the Senate Finance Committee likewise states that "the committee intends no inference regarding the deductibility of such payments under present law." S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 1, 224. Similar language is found in the Conference Committee report, which states, "the conferees intend no inference regarding the deductibility of such payments under present law." H. Rept. 99-841 (Conf.) (1986), 1986-3 C.B. (Vol. 4) 1, 169.

Section 311(a) was not argued in the *Five Star* case because the corporation there acquired the stock from its shareholder in his capacity as a debtor of the corporation. Here the stock was redeemed from petitioner's shareholders in their capacity as shareholders, and hence section 311(a) comes into operation. In two prior opinions we stated that such stock redemptions for cash come squarely within the terms of section 311(a). *Harder Services, Inc. v. Commissioner, supra; Proskauer v. Commissioner, supra.*

To reflect the above holdings,

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WELLS, RUWE, COLVIN, and HALPERN, *JJ.,* agree with this opinion.

WHALEN, *J.,* concurs in the result only.

BEGHE, *J.,* did not participate in the consideration of this opinion.