T.C. Memo. 2001-244


UNITED STATES TAX COURT


CHRYSLER CORPORATION, f.k.a. CHRYSLER HOLDING CORPORATION, AS
SUCCESSOR BY MERGER TO CHRYSLER MOTORS CORPORATION AND ITS
CONSOLIDATED SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22148-97.                    Filed September 18, 2001.


<u>James P. Fuller</u>, <u>Ronald B. Schrotenboer</u>, <u>William F. Colgin</u>,

<u>Kenneth B. Clark</u>, <u>Jennifer L. Fuller</u>, and <u>Laura K. Zeigler</u>, for

petitioner.

<u>Nancy B. Herbert</u> and <u>John E. Budde</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Respondent moves the Court for partial summary judgment.  See Rule 121.[1]  Respondent determined deficiencies of $593,967, $13,064,705, and $36,102,409 in petitioner's 1983, 1984, and 1985 Federal income taxes, respectively.  Following our disposition of two other issues in this case, see <u>Chrysler Corp. v. Commissioner</u>, 116 T.C. 465 (2001); <u>Chrysler Corp. v. Commissioner</u>, T.C. Memo. 2000-283, we must decide whether Chrysler Corporation (Chrysler) may deduct for 1985 amounts it paid to redeem its common stock held in the employee stock ownership trust (ESOT) underlying the Chrysler Employee Stock Ownership Plan (ESOP).  We hold it may not.

Background

Our statement of the background of this case is derived mainly from the pleadings, the parties' stipulation of facts as to the instant issue, the exhibits attached to that stipulation of facts, the parties' respective memoranda filed on May 3, 2000, as to issues of fact and law in this case, and the materials filed as to the instant motion.  We also include within our statement, as they relate to the operation of the ESOP and ESOT, the pertinent provisions of the Chrysler Corporation Loan

---

[1] Rule references are to the Tax Court Rules of Practice and Procedure.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the relevant years.

Guarantee Act of 1979 (LGA), Pub. L. 96-185, 93 Stat. 1324 (1980) (codified as amended at 15 U.S.C. secs. 1861-1875, 2003, 2512 (1982)). Petitioner, like its predecessor, Chrysler, is an accrual method taxpayer that manufactures and sells automobiles and trucks. Petitioner's principal place of business was in Auburn Hills, Michigan, when its petition was filed.

Chrysler was faced with an economic crisis in 1979 that resulted in Congress' enacting the LGA on Chrysler's behalf. As the House Banking, Finance, and Urban Affairs Committee recognized in its report on the LGA: "Without Federal financial assistance in the form of loan guarantees, the Chrysler Corporation will soon face bankruptcy and possible liquidation, with substantial consequences for the nation's economy, the federal budget, the balance of payments and; above all, several hundred thousand individual human beings." H. Rept. 96-690, at 8 (1979). By way of the LGA, Congress provided Chrysler with up to $1.5 billion in loan guaranties in return for Chrysler's satisfaction of certain conditions.

Two of these conditions required that employees of Chrysler and its subsidiaries and affiliates make at least $587.5 million in wage and benefit concessions and that Chrysler set up an employee stock ownership plan meeting the requirements of both sections 401(a) (qualified deferred compensation plans) and 4975(e)(7) (employee stock ownership plans). Two other

conditions required that Chrysler establish the ESOT within the rules of section 401(a) and that Chrysler contribute shares of its common stock to the ESOT over a 4-year period from 1981 through 1984. In each of those 4 years, Chrysler was required to contribute to the ESOT Chrysler common stock with a value of at least $40.625 million; during that 4-year period, Chrysler was required to contribute to the ESOT a total of at least $162.5 million of its common stock.

Employee stock ownership plans are tax-qualified plans which provide significant tax benefits (as discussed infra) and are designed to invest primarily in employer securities. Congress established these plans as part of the Employee Retirement Income Security Act of 1974, Pub. L. 93-406, sec. 407, 88 Stat. 880, current version at 29 U.S.C. sec. 1107(d)(6) (1994), envisioning that they "would function both as 'an employee retirement benefit plan and a "technique of corporate finance" that would encourage employee ownership.'" Kuper v. Iovenko, 66 F.3d 1447, 1457 (6th Cir. 1995) (quoting Martin v. Feilen, 965 F.2d 660, 664 (8th Cir. 1992) (quoting 129 Cong. Rec. S16629, S16636 (daily ed. Nov. 7, 1983) (statement of Sen. Long))); see also S. Rept. 97-144, at 119-123 (1981); 97 Cong. Rec. 17290-17294 (1981) (statement of Sen. Long); S. Rept. 94-36, at 55-60 (1975). Employees generally are not taxed on income of an employee stock ownership plan until it is distributed to them, and they may avail themselves of

certain rollover provisions not normally available to non-pension-plan compensation to postpone further their taxation on their distributions. The principal benefit to corporate employers is that they may deduct currently their contributions to the plans. The principal benefit to the plan itself is that the underlying trust is exempt from current taxation on its earnings.

Pursuant to the LGA, Chrysler established the ESOP effective July 1, 1980, and funded the ESOT by issuing to it new shares of Chrysler common stock during each of the ESOT's fiscal years ended June 30, 1981 through 1984. Pursuant to the terms of the ESOP, employees could participate in the plan if they had: (1) Worked for Chrysler or any of its subsidiaries or affiliates for 9 continuous months at the beginning of the plan year and (2) been affected by the wage and benefit concessions required by the LGA. Chrysler established the ESOP to: (1) Satisfy the LGA's requirement for obtaining the Federal Government's loan guaranties, (2) compensate employees for wage and benefit concessions, and (3) contribute to Chrysler's financial recovery and long-term viability by enhancing employee motivation and increasing productivity.

Chrysler contributed $162.5 million (15,251,891 shares) of its common stock to the ESOT from 1981 through 1984. Chrysler contributed approximately one-fourth of that dollar amount in

each of the 4 years and claimed a deduction for the market value of the contributed shares for the years in which the contributions were made.  The contributed shares amounted to approximately 22 percent of Chrysler's outstanding shares at the end of 1980, and the ESOT held the largest single block of Chrysler common stock.

The ESOT's trustee was a commercial bank named Manufacturer's National Bank of Detroit (MNB), and MNB's nominee was Calhoun & Co.  Pursuant to the LGA, MNB allocated the stock contributed by Chrysler to the individual accounts of the ESOP participants in equal amounts, provided that the participant had worked 650 hours or more during the plan year.  MNB also invested any dividends received on the stock allocated to a participant's account in additional shares of Chrysler common stock.  The LGA authorized the participants to vote the shares in their accounts. MNB had to vote the stock for which no directions had been received in the same proportion as the stock as to which directions had been received.  The ESOP authorized distributions to employees only in the event of:  (1) Death, in which case the proceeds were forwarded to the designated beneficiary, (2) termination of employment, or (3) the ESOP's termination. Chrysler's board of directors had the discretion to terminate the ESOP at any time after June 30, 1984.

In September 1983, while the ESOP was in place, Chrysler renegotiated its collective bargaining contracts with its employees who were members of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). The renegotiation resulted in a contract extending through October 1985. In 1985, when the collective bargaining contracts were again renegotiated, Chrysler agreed as part of those contracts to terminate the ESOP and to allow the participants either to keep the Chrysler common stock in the ESOT allocated to them or to allow Chrysler to redeem that stock at a per-share price equal to the applicable closing price on the New York Stock Exchange. In December 1985, Chrysler redeemed just over 9.58 million shares of its common stock from the ESOT for a total cost to Chrysler of $426,969,582.[2] The ESOP participants who opted not to sell their stock received over 3.2 million shares of Chrysler common stock from the ESOT.

On its 1985 Federal income tax return, Chrysler claimed a deduction of $327,595,421 associated with its redemption of its common stock from the ESOT. According to Chrysler's computation, the deduction was less than the redemption price so as not to duplicate the tax benefits Chrysler had previously received by

---

[2] These figures include 172,135 shares redeemed by Chrysler attributable to employees whose employment was terminated during 1985. Chrysler included the redemption price of these shares in the amount of its claimed deduction.

way of the tax deductions claimed for the same shares when contributed to the ESOT.  The approximate $328 million deduction was not taken for financial accounting purposes.  For those purposes, Chrysler reported the redemption as a purchase of treasury stock.

## Discussion

We must decide whether Chrysler may deduct the costs (redemption price and related expenses) which it incurred to redeem its common stock upon termination of the ESOP.  Respondent moves the Court to decide this issue by way of partial summary judgment, arguing that a firmly established body of law holds that a corporation may not deduct the costs which it incurs to redeem its stock.  Petitioner objects to respondent's motion.  Petitioner asserts that it may deduct its costs as personal service compensation or, alternatively, as a financing expense.  Petitioner argues as to its primary assertion that material facts are still in dispute which will establish that Chrysler redeemed its common stock from the ESOT intending to compensate the employees for their personal services.  Petitioner argues as to its alternative assertion that material facts are still in dispute which will establish that it redeemed its common stock from the ESOT as a financing expense.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues.

P & X Mkts., Inc. v. Commissioner, 106 T.C. 441, 443 (1996), affd. without published opinion 139 F.3d 907 (9th Cir. 1998); Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 347 (1996). The concept of summary judgment is specifically recognized by this Court and is deeply ingrained in our procedural rules. See Rule 121(a) ("Either party may move, with or without supporting affidavits, for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy"). Summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(b); P & X Mkts., Inc. v. Commissioner, supra at 443; Boyd Gaming Corp. v. Commissioner, supra at 347. In deciding whether to grant summary judgment, we must consider the factual materials and inferences drawn from them in the light most favorable to the nonmoving party. Boyd Gaming Corp. v. Commissioner, supra at 347. In responding to a motion for summary judgment, the nonmoving party must do more than merely allege or deny facts. It must "set forth [in its response] specific facts showing that there is a genuine issue for trial. If the nonmoving party does not so respond, then a decision, if appropriate, may be entered against such party." Rule 121(d); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). Summary judgment also

may be granted if the evidence submitted by the nonmoving party is merely colorable or not significantly probative. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

An accrual method taxpayer such as Chrysler may deduct an expenditure under section 162(a) only if the expenditure is: (1) An expense, (2) an ordinary expense, (3) a necessary expense, (4) incurred during the taxable year, and (5) made to carry on a trade or business. Commissioner v. Lincoln Sav. & Loan Association, 403 U.S. 345, 352-353 (1971); see also Lychuk v. Commissioner, 116 T.C. 374, 386 (2001). A necessary expense is an expense that is appropriate or helpful to the development of the taxpayer's business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Welch v. Helvering, 290 U.S. 111, 113-115 (1933). An ordinary expense is an expense that is "normal, usual, or customary" in the type of business involved. Deputy v. du Pont, 308 U.S. 488, 495-496 (1940); see also Welch v. Helvering, supra at 113-115. The need for an expenditure to be ordinary serves, in part, to "clarify the distinction, often difficult, between those expenses that are currently deductible and those that are in the nature of capital expenditures, which, if deductible at all, must be amortized over the useful life of the asset." Commissioner v. Tellier, supra at 689-690.

Before the passage of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, the cost of redeemed stock was more often

than not a capital expenditure rather than a deductible expense.[3]
Frederick Weisman Co. v. Commissioner, 97 T.C. 563 (1991);
Atzingen-Whitehouse Dairy, Inc. v. Commissioner, 36 T.C. 173, 183
(1961).  Whether a corporation's redemption of its stock may
constitute an ordinary and necessary business expense under
section 162 has been considered frequently before.  The relevant
cases generally begin their analysis with the oft-quoted
principle of United States v. Gilmore, 372 U.S. 39 (1963).
There, the Supreme Court held that the expense of defending a
divorce suit was a nondeductible personal expense, even though
the outcome of the divorce would affect the taxpayer's holdings
of income-producing property and might affect his business
reputation.  The Court explained:

--------

[3] In the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514,
sec. 613, 100 Stat. 2251, Congress added a new sec. 162(l) to
prohibit deductions otherwise allowable for payments paid or
incurred to redeem corporate stock.  The Senate Finance Committee
explained in its report that the new provision "denies a
deduction for any amount paid or incurred by a corporation in
connection with the redemption of its stock."  S. Rept. 99-313,
at 233 (1986), 1986-3 (Vol. 3) 1, 223.  Sec. 162(l) was
redesignated sec. 162(k) by the Technical and Miscellaneous
Revenue Act of 1988, Pub. L. 100-647, sec. 3011(b)(3)(A), 102
Stat. 3342, 3625.  Sec. 162(k) applies only to payments made
after Feb. 28, 1986.  We have observed that Congress made it
clear that in adding what is now sec. 162(k), it intended no
inference as to the deductibility of such payments under
preexisting law.  Fort Howard Corp. v. Commissioner, 103 T.C.
345, 357 n. 20 (1994); Frederick Weisman Co. v. Commissioner, 97
T.C. 563, 574 (1991) (citing, inter alia, H. Conf. Rept. 99-841
(Vol. II), at II-169 (1986), 1986-3 C.B. (Vol. 4) 1, 169).

the origin and character of the claim with respect to which an expense was incurred, rather than its potential consequences upon the fortunes of the taxpayer, is the controlling basic test of whether the expense was "business" or "personal" and hence whether it is deductible or not * * *  [Id. at 49.]

A few years later, a corporation's right to deduct amounts paid to redeem its stock reached its zenith in Five Star Manufacturing Co. v. Commissioner, 355 F.2d 724 (5th Cir. 1966), revg. 40 T.C. 379 (1963).  There, the Court of Appeals for the Fifth Circuit permitted a corporation to deduct as an ordinary and necessary expense the cost of redeeming its stock from a 50-percent shareholder, Mr. Smith.  Mr. Smith had become deeply indebted to the corporation, and the corporation obtained a judgment for the amount of the debt.  The corporation later redeemed Mr. Smith's shares at a judicial sale and credited those proceeds against his debt.  The Court of Appeals for the Fifth Circuit held that the corporation could deduct the amount that it paid to redeem those shares because the redemption was essential to its survival.  The court explained:  "It can scarcely be held that the payment to Smith was for the acquisition of a capital asset, but rather one which would permit Five Star again to use assets for income production by freeing its management from unwanted fetters."  Id. at 727.  In reaching its holding, the court made no reference to United States v. Gilmore, supra.

Thereafter, the Supreme Court applied the origin of the claim test of United States v. Gilmore, supra, to two companion cases in which the issue was whether expenses were ordinary or capital. See United States v. Hilton Hotels Corp., 397 U.S. 580 (1970); Woodward v. Commissioner, 397 U.S. 572 (1970). Both cases involved the deductibility of a corporation's costs incurred incident to the appraisal and acquisition of dissenters' stock. The Court rejected the corporations' claims that the costs were deductible because their "primary purpose" did not directly involve the acquisition of stock. In the Woodward case, the Court explained that "A test based upon the taxpayer's 'purpose' in undertaking or defending a particular piece of litigation would encourage resort to formalisms and artificial distinctions." The Court rejected the primary purpose test as "uncertain and difficult" and directed that the issue of whether an expense is ordinary or capital be controlled by the "simpler inquiry whether the origin of the claim litigated is in the process of acquisition itself." Woodward v. Commissioner, supra at 577.

A few years after the Woodward and Hilton cases, we applied the origin of the claim test to a corporation's claimed deduction of amounts it paid to redeem the shares of a minority shareholder. In Harder Servs., Inc. v. Commissioner, 67 T.C. 585, 596 (1976), affd. without published opinion 573 F.2d 1290

(2d Cir. 1977), the corporation redeemed an employee's stock as part of terminating his employment, which was done in order to extricate the corporation from an unfavorable financial and management situation. We found that the "origin and nature of the [redemption] payment was a capital transaction" and, relying upon the cases of Gilmore, Woodward, and Hilton, rejected the corporation's attempt to deduct that payment. We declined to accept the taxpayer's argument that the amount paid to the disaffected employee over and above the value of the stock he surrendered was deductible compensation. We found that any compensatory aspect of the transaction was inseparable from the capital aspect--the elimination of his equity interest. We explained that "there is nothing in the record to indicate that * * * [the employee] would have been paid anything * * * had he wished to retain his * * * shares". We distinguished Five Star Manufacturing Co. v. Commissioner, supra, which had allowed a deduction of redemption payments, on the basis of our finding that the redemption in the Harder Servs., Inc. case was not necessary to preserve the corporation.

The Supreme Court provided a further development in Ark. Best v. Commissioner, 485 U.S. 212 (1988). There, it held that the taxpayer could not deduct as an ordinary and necessary business expense the loss it incurred on a disposition of a subsidiary's stock, although the stock had been acquired with the

purpose of preventing damage to its business reputation. The
Court reaffirmed that the taxpayer's motivation or business
purpose for purchasing an asset is irrelevant in determining
whether the asset is a capital asset.

Subsequently, in Frederick Weisman Co. v. Commissioner,
97 T.C. 563 (1991), we stated that we would no longer follow the
Court of Appeals for the Fifth Circuit's opinion in Five Star
Manufacturing Co. v. Commissioner, supra. In the Frederick
Weisman Co. case, the taxpayer's sole supplier suddenly required
the taxpayer to redeem the stock of all its shareholders other
than the principal owner. The taxpayer did so and deducted the
cost, including the purchase price of the redeemed stock plus the
expenses. The taxpayer maintained that the deduction was
justified as an ordinary and necessary business expense under
section 162 because, as was the case in Five Star Manufacturing
Co. v. Commissioner, supra, the redemption was necessary in order
to preserve the corporation's business. We declined to allow the
deduction.

We discussed extensively in Frederick Weisman Co. our
disagreement with the Court of Appeals for the Fifth Circuit's
opinion in Five Star Manufacturing Co. v. Commissioner, supra.
We stated:

> to the extent that the Fifth Circuit's Five Star
> exception apparently transmutes the purchase price and
> expenses of a corporation acquiring its own stock into

> ordinary and necessary expenses deductible under
> section 162, we think it has been sapped of any
> remaining vitality by the Supreme Court's <u>Woodward</u>,
> <u>Hilton Hotels</u>, and <u>Arkansas Best</u> line of cases. * * *
> [<u>Frederick Weisman Co. v. Commissioner</u>, <u>supra</u> at 573.]

We noted that various other courts, including the Court of Appeals for the Fifth Circuit itself, had severely limited the application of <u>Five Star Manufacturing Co. v. Commissioner</u>, 355 F.2d 724 (5th Cir. 1966), insofar as that case had allowed a corporation to deduct an otherwise capital expenditure if the survival of the corporate business were at stake.  See <u>Markham & Brown, Inc. v. United States</u>, 648 F.2d 1043, 1045 (5th Cir. 1981); <u>Richmond, Fredericksburg & Potomac R.R. Co. v. Commissioner</u>, 528 F.2d 917, 920 (4th Cir. 1975) (need to show "dire necessity"), affg. 62 T.C. 174 (1974); <u>Jim Walter Corp. v. United States</u>, 498 F.2d 631, 639 (5th Cir. 1974) (Five Star "limited to situations where a payment to purchase a capital asset, though capital in nature, is necessary to the taxpayer's survival."); <u>H. & G. Indus., Inc. v. Commissioner</u>, 495 F.2d 653, 657 (3d Cir. 1974), affg. 60 T.C. 163 (1973); <u>Stokely-Van Camp, Inc. v. United States</u>, 21 Cl. Ct. 731, 754 (1990).[4]  In <u>Frederick Weisman Co. v. Commissioner</u>, <u>supra</u> at 572, we observed:

---

[4] Even if we were to assume that <u>Five Star Manufacturing Co. v. Commissioner</u>, 355 F.2d 724 (5th Cir. 1966), revg. 40 T.C. 379 (1963), is still good law, petitioner makes no argument or showing that the stock redemption was indispensable to Chrysler's survival so as to invoke the exception of that case.

The flaw in the <u>Five Star</u> exception is that it requires the trier of fact to look to the primary purpose of the transaction in order to determine if an otherwise capital expenditure can be treated as an ordinary and necessary business expense under section 162. While the Fifth Circuit purported to look to the nature of the transaction, its ultimate focus was on the purpose or business reasons for which the stock was purchased.

Petitioner's argument is permeated by the same flaw that, as we observed in <u>Frederick Weisman Co.</u>, was present in the "<u>Five Star</u> exception". According to petitioner, the origin and nature of Chrysler's costs of redeeming its common stock arose in the context of a union demand for compensation on behalf of the employees. Therefore, petitioner concludes, the costs patently constitute an ordinary and necessary expenses of doing business, deductible under section 162(a). We disagree. Although petitioner's argument purports to look to the nature of the redemption transaction, its ultimate focus is on its purpose or business reasons for which the Chrysler common stock was redeemed. As we noted in <u>Frederick Weisman Co. v. Commissioner</u>, <u>supra</u> at 572-573: "The Supreme Court in <u>Woodward</u> and <u>Hilton Hotels</u>, and more recently in <u>Arkansas Best Corp.</u>, has made it clear that this line of inquiry is inappropriate." Thus, as our opinion in <u>Frederick Weisman Co. v. Commissioner</u>, <u>supra</u>, makes clear, redemption payments such as these simply are not ordinary and necessary business expenses deductible under section 162(a).

Nor are we persuaded by petitioner's endeavor to avoid application of the well-settled law on redemptions by characterizing the full amount of the redemption payments solely for purposes of this proceeding as the payment of personal service compensation.[5]  The redemption payments at hand were not, as petitioner would have it, a substitute for wages.  Those payments were triggered by the demand of Chrysler's employee/shareholders that Chrysler redeem its common stock from the ESOT at fair market value.  That demand required that Chrysler pay to the employee/shareholders nothing more than they would have otherwise received had they sold their Chrysler common stock to an unrelated party on a public market.  The fact that the redemption payments were not attributable to the personal services of the employees is seen quickly from the fact that Chrysler merely paid the employees for the appreciated value of their stock.  See also Clayton v. United States, 33 Fed. Cl. 628 (1995) (decision on the taxability of distributions from the ESOT to nonresident alien plan participants), affd. without published opinion 91 F.3d 170 (Fed. Cir. 1996).  The employees did not

---

[5] Although the manner in which a taxpayer reports an expenditure for financial accounting purposes does not control its proper characterization for Federal income tax purposes, Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 542-543 (1979); see also Old Colony R.R. Co. v. Commissioner, 284 U.S. 552, 562 (1932), we give due regard to the fact that Chrysler reported the redemption as a purchase of treasury stock for financial accounting purposes.

receive anything of value from the redemption on account of personal services that would entitle Chrysler to deduct a compensation expense with respect thereto.  The employees have simply surrendered their Chrysler stock for its value in cash.

Nor are we persuaded by petitioner's insistence that a proper analysis of the origin of the claim test is that presented in Keller St. Dev. Co. v. Commissioner, 688 F.2d 675 (9th Cir. 1982), affg. T.C. Memo. 1978-350, and that this analysis shows that Chrysler's costs to redeem its common stock are deductible. In the Keller St. Dev. Co. case, the taxpayer corporation sold a brewery.  Dissenting shareholders sued for rescission in a derivative suit.  After 10 years, the litigation produced a judgment, part of which awarded the corporation $2,432,175.45. This amount represented compensation for the buyer's use of the brewery assets and as a substitute for the products or profits that those assets would have generated following the sale.  In affirming a decision of this Court, the Court of Appeals for the Ninth Circuit rejected the taxpayer's assertion that the $2,432,175.45 was taxable as capital gains on the sale of assets. The court determined that the claim which produced the $2,432,175.45 award originated in the sale of the brewery's assets, a capital transaction.  The court then reasoned that "we must next examine how the payment fits into the structure of a capital transaction."  Id. at 682.  It concluded that the award

was "analogous either to interest paid to a seller to compensate for delay in payment of a purchase price, or to rent paid for the temporary use of income producing property." Id. Because the payment of either interest or rent would have been taxable as ordinary income, the Court of Appeals for the Ninth Circuit held that the $2,432,175.45 award was taxable to the corporation as ordinary income.

The case of Keller St. Dev. Co. v. Commissioner, supra, is of no help to petitioner. As discussed above, the redemption payments at hand were not a substitute for wages. Those payments resulted from the demand of Chrysler's employee/shareholders that Chrysler redeem its common stock from the ESOT at fair market value. That demand required that Chrysler pay to the employee/shareholders nothing more than they would have otherwise received had they sold their Chrysler common stock to an unrelated party on a public market.

We also held in Frederick Weisman Co. v. Commissioner, 97 T.C. 563 (1991), that section 311(a) precluded the deduction of amounts paid to redeem stock. Section 311(a) provides:

> SEC. 311(a). General Rule. -- Except as provided in [subsection] (b), * * * no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of --
>
>> (1) its stock (or rights to acquire its stock), or

(2) property.[6]

In <u>Frederick Weisman Co. v. Commissioner</u>, <u>supra</u> at 574, we observed that "In two prior opinions we stated that such stock redemptions for cash come squarely within the terms of section 311(a). <u>Harder Servs., Inc. v. Commissioner</u>, <u>supra</u> [67 T.C. 585 (1976)]; <u>Proskauer v. Commissioner</u>, <u>supra</u> [T.C. Memo 1983-295]." "Here the stock was redeemed from petitioner's shareholders in their capacity as shareholders, and hence section 311(a) comes into operation." <u>Id.</u>[7]

---

[6] The meanings of the terms "property" and "redemption" are set forth in sec. 317, which provides:

SEC. 317.  OTHER DEFINITIONS.

(a) Property. -- For purposes of this part, the term "property" means money, securities, and any other property; except that such term does not include stock in the corporation making the distribution (or rights to acquire such stock).

(b) Redemption of Stock.  For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.

[7] We have also held in other cases that sec. 311 bars the deduction of amounts paid to redeem stock. E.g., <u>Roberts & Porter, Inc. v. Commissioner</u>, 37 T.C. 23 (1961), revd. on other grounds 307 F.2d 745 (7th Cir. 1962); accord <u>Stokely-Van Camp, Inc. v. United States</u>, 21 Cl. Ct. 731, 754 (1990), affd. 974 F.2d 1319 (Fed. Cir. 1992).  Compare <u>H. & G. Industries, Inc. v. Commissioner</u>, 495 F.2d 653, 657 (3d Cir. 1974), affg. 60 T.C. 163 (1973), where the Court of Appeals for the Third Circuit found it unnecessary to decide that issue.  The applicability of sec. 311(a) was not argued in <u>Five Star Manufacturing Co. v.</u>

(continued...)

Our holding in <u>Frederick Weisman Co. v. Commissioner</u>, <u>supra</u>, is dispositive here. Because Chrysler redeemed its common stock from the employees (through the ESOP) in their capacity as shareholders, section 311(a) denies Chrysler the opportunity to recognize either gain or loss on the transaction.

Petitioner contends that Chrysler's redemption of its stock falls within a specific exception to the application of section 311(a). We disagree. That exception, which was in effect for the subject years, was set forth in section 1.311-1(e)(1), Income Tax Regs., to read as follows:

> (1) Section 311 is limited to distributions which are made by reason of the corporation-stockholder relationship. Section 311 does not apply to transactions between a corporation and a shareholder in his capacity as debtor, creditor, employee, or vendee, where the fact that such debtor, creditor, employee, or vendee is a shareholder is incidental to the transaction. Thus, if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property.[8]

---

[7](...continued)
<u>Commissioner</u>, 40 T.C. 379, 387 n.5 (1963), because the parties there apparently agreed that the corporation acquired its stock from its shareholder in his capacity as a debtor of the corporation.

[8] Former sec. 1.311-1, Income Tax Regs., was redesignated as relating to prior law and was removed from the Code of Federal Regulations pursuant to T.D. 8474, 1993-1 C.B. 242. See also Notice 92-12, 1992-1 C.B. 500, 504.

That exception has no applicability to the instant case. When Chrysler redeemed its common stock from the ESOT, the selling shareholders were not acting as debtors, creditors, employees, or vendees. Chrysler redeemed the stock from those shareholders in their capacities as shareholders who wished to dispose of their stock for its current value. They sold their stock, most of which had been acquired over a period of years, at prices which had been determined by trading on the New York Stock Exchange. This is classically a capital transaction, and it involved only those sellers of stock who choose to engage in the redemption. The employees who did not choose to sell their stock received no part of the amounts Chrysler now seeks to deduct as compensation, although they had forgone the same pay raises as those who chose to sell their stock. In addition, other employees, who had not worked for Chrysler long enough when the ESOP was in effect, were left out of the redemption altogether.

The fact that the UAW negotiated the sale of the common stock does not change the origin and nature of the costs Chrysler paid for the redemption. The provisions of the LGA placed the UAW, perhaps anomalously, in the role of representative of the largest single block of shareholders in Chrysler. The fact remains that although these sellers of Chrysler common stock were also employees of Chrysler, they received the cash Chrysler now seeks to deduct in their capacities as owners and sellers of

corporate stock.  Their status as shareholders was not

"incidental" to the transaction; it was essential.  Accordingly,

the exception to application of section 311(a) provided in former

section 1.311-1(e), Income Tax Regs., does not apply.[9]

Finally, petitioner maintains that summary judgment is

inappropriate in this case.  According to petitioner, a

determination of the origin and nature of a claim is ordinarily

an intensively factual matter, and the parties still dispute many

relevant facts.  We disagree with petitioner's assertion that the

subject issue is not ripe for summary judgment.  After reviewing

the materials filed by both parties, we find that there is no

genuine issue as to any of the material facts that we have set

forth supra in the background section.  "Only disputes over facts

that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment.  Factual

disputes that are irrelevant or unnecessary will not be counted."

Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  Here, in

resisting summary judgment, petitioner has proffered the

---

[9] We also find without merit petitioner's similar argument
that the cost of redeeming the common stock is deductible as an
expense of securing the LGA guaranty.  This contention is
misguided both as to the facts and the law.  The undisputed facts
show that, although the Government required Chrysler to establish
the ESOP, it did not require the redemption which gave rise to
the claimed deduction.  Moreover, even if a redemption had been
required as a condition of the loan guaranty, such a requirement
would not affect the origin and nature of the redemption as a
capital expenditure.

affidavit of an executive indicating that petitioner is ready to present additional evidence about the creation, existence, and termination of the ESOP.  Although this demonstration might provide more specificity as to the details concerning the ESOP, in our estimation these additional facts would be irrelevant to a determination whether Chrysler could deduct amounts it paid to redeem its stock from the ESOT.  The uncontested facts reveal to our satisfaction that the origin and nature of the claim that gave rise to the claimed deduction was inherently capital. Chrysler's employee-shareholders demanded payment, at market prices, for their Chrysler common stock.  As we have held, well-established case law, as well as the provisions of section 311, preclude the deduction of the amounts which Chrysler paid to satisfy that claim.

Each argument of the parties has been considered, and we have rejected those arguments not discussed herein as meritless. Accordingly,

<u>An appropriate order will be issued</u>.