### FIVE STAR MANUFACTURING COMPANY, Petitioner,

v.

### COMMISSIONER OF INTERNAL REVENUE, Respondent.

#### No. 21041.

United States Court of Appeals
Fifth Circuit.

Jan. 21, 1966.

L. Lamar Beacham, Jackson, Miss., for petitioner, Creekmore & Beacham, Jackson, Miss., of counsel.

John B. Jones, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, R. P. Hertzog, Acting Chief Counsel, Robert B. Alexander, Jr., Atty., I.R.S., Marco Sennenschein, Meyer Rothwacks, Melva M. Graney, Jonathan S. Cohen, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before JONES and WISDOM, Circuit Judges, and BREWSTER, District Judge.

WARREN L. JONES, Circuit Judge:

The Tax Court determined that Five Star Manufacturing Company was liable for an income tax deficiency for the tax year ending June 30, 1957, in the amount of $18,377.89. The findings and opinion of the Tax Court are reported at 40 T. C. 379. Its decision is before us for review.

In 1949, Andrew L. Freeman of Grand Forks, North Dakota, procured a patent on an automobile heater known as the Freeman Headbolt Heater. In 1950 Freeman, by a patent license agreement, gave to W. S. Kincade and H. E. Smith, Jr., the exclusive right to manufacture, use and sell the patented heater within the United States, its territories and dependencies, for the term of the patent and any renewal thereof, for a consideration of $80,000, plus royalties of five percent of the price of heaters sold with a minimum royalty of $10,000 per year. Kincade and Smith transferred to the petitioner, Five Star Manufacturing Company, an exclusive ten year license to manufacture the heater for a consideration of $80,000, payment to Kincade and Smith of ten percent of the selling price of all heaters in excess of $200,000 per year, and the discharge of the obligations under the Freeman agree-

ment including the royalty payments to him. Kincade and Smith were equal owners of the stock of Five Star, and they and their wives were its directors.

During 1950 Five Star commenced manufacturing the Freeman heater. From the beginning of the operation until April 20, 1952, royalties were regularly paid to Freeman. After that date and during all times here pertinent, no royalties were paid to Freeman. Smith drew heavily from Five Star's treasury, and by early 1954, his withdrawals for salary, expenses and money borrowed amounted to over $350,000. At that time Five Star held Smith's promissory notes in the amount of $88,000. In April of 1954, Freeman brought suit against Smith, Kincade and Five Star for unpaid royalties and attached most of Five Star's assets. The court gave Freeman a judgment and cancelled the patent licensing agreement which' Freeman had given to Kincade and Smith and which they had leased or assigned to Five Star. Kincade paid a part of the judgment and gave Freeman satisfactory assurances that the balance would be paid. Freeman made a new agreement with Kincade which provided for a licensing of the patent on substantially the same terms as the prior arrangement. Freeman was unwilling to enter into any arrangement in which Smith was a participant as a stockholder of a corporation or otherwise.

Five Star made an unsuccessful demand on Smith for the payment of his indebtedness. He countered by a suit seeking, among other things, a receivership for Five Star. Cross-complaints and counterclaims were filed. A judgment was entered on May 5, 1954 for Five Star against Smith for the net amount of $56,715.43. Kincade was given a judgment against Five Star for $296,723.21. Salary claims of Smith and Kincade against Five Star were not adjudicated. The court refused to put Five Star in receivership and for its reason commented in these terms:

"If there were any creditors or innocent stockholders of this corporation, I would unhesitatingly put it in receivership, with orders to the receiver to proceed, in so far as possible, to make the directors disgorge for their benefits. I find no one, however, in that category. The only creditor of any consequence [Kincade] is not here complaining and seems to be well on the way toward protecting himself in litigation now pending.

\* \* \* \* \* \*

"The court finds that, if there is to be salvation for The Five Star Manufacturing Company, it will have to come from the use of Mr. Kincade's personal credit, his know-how in this business and his energy and business ability, and that to hamper this use by the appointment of a receiver would be absolutely fatal to the future of the corporation and could mean only liquidation, disastrous to all concerned, and, therefore, the prayer for a receivership is denied."

Smith's stock was put up for sale and the only bid was $40,000 offered by Five Star. Smith opposed confirmation of the sale on the ground of inadequacy of price and guaranteed a bid of $48,000 for the stock. A resale was ordered, and upon the second offering the only bid was of $56,000 made by Five Star. The bid was accepted, the sale was confirmed. Smith v. Kincade, 5th Cir. 1956, 232 F.2d 306. The acquisition of the stock was set up on the books of Five Star at $56,000 and that amount was credited against Smith. Efforts to collect further sums from Smith were unsuccessful. He had no assets from which payment of any of the remainder of the obligation could be realized.

Five Star attempted to borrow money from its bank and the bank refused to make the loan. To provide it with funds Kincade borrowed money and advanced them to Five Star. During the year ending June 30, 1953, Five Star reported net income for income tax purposes of $24,714.72, and for the year ending June 30, 1954, its return showed a net loss of $168,167.51.

On June 30, 1954, the assets and liabilities of Five Star were as shown by the balance sheet set forth in  he margin.[1]

### I. ASSETS

#### CURRENT ASSETS

| | | |
|---|---:|---:|
| Petty Cash | 100.00 | |
| Red River National Bank—Overdraft | (809.58) | |
| Bank of Clarksdale | 11.63 | |
| Accounts Receivable | 1,008.92 | |
| Advance to Employees other than H. E. Smith, Jr. | 607.93 | |
| Advance to H. E. Smith, Jr. | 800.00 | |
| Coco-Cola Fund | 173.49 | |
| Raw Materials Inventory | 81,915.09 | |
| Goods in Process Inventory | 15,312.98 | |
| Finished Goods Inventory | 389,212.33 | |
| Judgment Receivable—H. E. Smith, Jr. | 88,610.00 | |
| Accrued Interest Receivable | 699.17 | |
| Total Current Assets | | 577,641.96 |

| FIXED ASSETS | Cost | Res. for Depr. | |
|---|---:|---:|---:|
| Land | 1,400.00 | | 1,400.00 |
| Factory Mach. and Equip. | 25,276.83 | 16,215.47 | 9,061.36 |
| Leasehold Impr. | 33,165.09 | 18,548.09 | 14,617.00 |
| Office Furn. & Fix. | 7,327.35 | 4,488.86 | 2,838.49 |
| Trucks and Autos | 24,317.34 | 13,433.56 | 10,883.78 |
| | 91,486.61 | 52,685.98 | 38,800.63 |

#### DEFERRED CHARGES

| | |
|---|---:|
| Prepaid Insurance | 1,425.41 |
| TOTAL ASSETS | 617,868.00 |

### LIABILITIES AND CAPITAL

#### CURRENT LIABILITIES

| | | |
|---|---:|---:|
| Accounts Payable | 3,664.71 | |
| Accounts Payable—Delta Mfg. Co. | 49,804.80 | |
| Due on Patent License | 18,684.03 | |
| Commissions Payable | 579.66 | |
| Rents Payable | 3,000.00 | |
| Notes Payable | 45,381.09 | |
| Accrued Interest Payable | 3,925.71 | |
| Social Security Tax Payable | 780.41 | |
| Withholding Tax Payable | 2,267.68 | |
| Unemployment Compensation Tax Payable | 321.47 | |
| Federal Excise Tax Payable | 56.73 | |
| Manufacturer's Excise Tax Payable | 763.53 | |
| Federal Income Tax Payable | 1,482.88 | |
| Judgments Payable—W. S. Kincade | 296,723.21 | |
| Judgments Payable—H. E. Smith, Jr. | 7,500.00 | |
| Accrued Interest Payable—W. S. Kincade | 2,390.06 | |
| Accrued Interest Payable—H. E. Smith, Jr. | 60.41 | |
| Salaries Payable—W. S. Kincade | 36,166.77 | |
| Salaries Payable—H. E. Smith, Jr. | 25,833.33 | |
| Total Current Liabilities | | 499,386.48 |

#### CAPITAL

| | | |
|---|---:|---:|
| Capital Stock | | 20,000.00 |
| Surplus—June 30, 1953 | 266,649.03 | |
| Net Loss for the Fiscal Year | 168,167.51 | |
| Surplus—June 30, 1954 | | 98,481.52 |
| Total Capital | | 118,481.52 |
| TOTAL LIABILITIES AND CAPITAL | | $617,868.00 |

At the time of the judicial sale of the Smith stock, two-thirds of the Finished Goods Inventory was under the attachment made at the behest of Freeman. The license to manufacture and sell under the Freeman patent had been cancelled. Five Star had neither the right to sell nor goods which could have been sold. It had no working capital and no credit. It had obligations which could not have been paid from the assets upon a liquidation which would have been inevitable if Smith had not been removed from the scene. As intimated by the district court, the future of the company, at the time of the sale, depended upon Kincade, his credit, his know-how, energy and business ability. It also depended upon Freeman's willingness to allow Five Star to continue in business under Kincade's management and backing but only if Smith was out of the picture. Had Smith remained as the owner of fifty percent of the stock of Five Star, its liquidation was inevitable, and in the event of its liquidation there could have been no realization for stockholders. With the removal of Smith, with the management and credit of Kincade, and with the cooperation of Freeman, there was a chance for survival.

To be deductible as a business expense, the payment must be both ordinary and necessary.[2] It seems unquestionable that the payment to Smith to terminate his interest in Five Star was a necessary expense. Whether it was an ordinary expense depends upon the nature of the transaction. Even though it may arise in a situation unlikely to ever recur, an expense will be regarded as ordinary if it is of a kind that would be common or frequent in the type of business involved. Deputy v. duPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Campbell v. Fields, 5th Cir. 1956, 229 F.2d 197. It can scarcely be held that the payment to Smith was for the acquisition of a capital asset, but rather one which would permit Five Star again to use assets for income production by freeing its management from unwarranted fetters. Allen v. Selig, 5th Cir. 1952, 200 F.2d 487; Campbell v. Fields, supra; Helvering v. Community Bond & Mortgage Corporation, 2nd Cir. 1935, 74 F.2d 727. Illustrative of the principle is Hogg v. Allen, M.D.Ga.1952, 105 F.Supp. 12, aff. sub. nom. Edwards v. Hogg, 5th Cir. 1954, 214 F.2d 640, where it was held that the loss from the sale of shares of stock purchased by a partnership in a wholesale whiskey business for the purpose of acquiring whiskey procurement rights attached to the stock was deductible as an ordinary and necessary business expense. In a similar situation the Tax Court has held that the loss resulting from the purchase of debentures of a supplier made to insure preferential treatment was a deductible expense. Tulane Hardwood Lumber Co. v. Commissioner, 24 T.C. 1146.

Concluding, as we do, that the payment for the Smith stock was deductible as an ordinary and necessary business expense, we find it unnecessary to decide the question as to the value of the stock.

The decision of the Tax Court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

---

2. There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred in carrying on any trade or business * * *. 26 U.S.C.A. § 162.