## H. AND G. INDUSTRIES, INC. and subsidiaries, Appellant,

v.

## COMMISSIONER OF INTERNAL REVENUE.

### No. 73–1718.

United States Court of Appeals, Third Circuit.

Argued March 15, 1974.

Decided April 18, 1974.

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

Martin D. Cohen, Newark, N. J., for appellant.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Richard W. Perkins, James H. Bozarth, Attys., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before ALDISERT, GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

H. & G. Industries, Inc., the taxpayer-appellant in this case, redeemed an issue of its preferred stock at a premium in order to relieve itself of the allegedly onerous stock purchase agreement pursuant to which the preferred was issued. The sole question on this appeal is whether the taxpayer is entitled to deduct the premium paid by it on this redemption as an ordinary and necessary business expenses under § 162(a) of the Internal Revenue Code of 1954 (the

Code). The taxpayer deducted the item on its income tax return for the fiscal year ending August 31, 1968. The Tax Court denied the deduction, 60 T.C. 163, and denied reconsideration in a memorandum opinion dated June 13, 1973. This appeal followed, and we affirm.

The facts of this case are not in dispute. The taxpayer[1] is a New York corporation, with its principal place of business in New Jersey, engaged in the manufacture of paint brushes and rollers. It concluded in 1963 that it needed approximately $450,000 to liquidate an existing loan account with a Newark bank and to establish and maintain adequate working capital. It borrowed $250,000 from another New Jersey bank and it obtained the balance of $200,000 from the First Small Business Investment Corporation of New Jersey (SBIC)[2] under a Stock Purchase Agreement. Pursuant to the agreement, SBIC purchased 2,000 shares of "8% Convertible Participating Preferred Stock" of the taxpayer, having a par value of $100 per share, for $200,000. The taxpayer agreed to pay an 8% cumulative preferred dividend, as well as 12½% of annual consolidated net profits which remained after taxes and after the 8% dividend. The profit participation amount was limited to a maximum of $14,000 annually no matter how great profits were in a given year. The taxpayer retained the option to call all (but not part) of the preferred stock at any time, at $120 per share. The agreement contained various other restrictions on the taxpayer, involving such matters as the permissible levels of current assets and net worth, mergers, compensation of officers, and dividends on common stock. The agreement would terminate when the taxpayer called the preferred, or

---

1. The taxpayer's subsidiaries are parties to this action solely because they and the taxpayer filed a consolidated income tax return.

2. SBIC was a corporation licensed under the Small Business Investment Act of 1958, 15 U.S.C. § 681 et seq. Although the Act had originally permitted a small business investment company to make only loans to small business concerns, 72 Stat. 691 (1958), the Act was amended in 1960 to permit the furnishing of equity capital as well. 74 Stat. 196 (1960), 15 U.S.C. § 684.

when SBIC converted its stock to common stock or else offered any of its preferred stock to the taxpayer pursuant to the taxpayer's right of first refusal.

From the issuance of this preferred stock in 1963 until the redemption of the stock in 1967, the taxpayer carried the stock on its balance sheets in the capital account. Both the 8% dividend and the 12½% annual participation amounts were treated as dividend distributions on the taxpayer's tax returns for those years.

A company officer testified that the payments on the preferred stock were burdensome[3] because it "reduced our working capital and in essence strangled our corporation as far as growth was concerned." The taxpayer therefore retired the shares in 1967 at the contract price of $120 per share, or $240,000. To replace the capital, the taxpayer thereupon negotiated a conventional mortgage loan at 7 per cent and secured a seasonal line of credit at a quarter per cent above prime.

We should first note what is not involved in this case. The taxpayer concedes that preferred stock was in reality equity rather than debt, and thus it does not contend that the redemption premium is deductible as interest under § 163 of the Code. We can therefore set aside the numerous cases which examine the characteristics of an obligation to determine whether it is in reality equity or debt.

The taxpayer contends, however, that even if the obligation is equity, the $40,000 premium, which it always considered to be a "pre-payment penalty," should be deductible as an ordinary and necessary business expense under § 162(a) of the Code.[4] In support of this contention it relies on those cases which permit a deduction for payments made by a corporation to buy out of a burdensome contract obligation with another party,[5] or which permit a deduction for the payments made by a corporation to purchase the stock of a different corporation in order to be relieved of a contract it made with the latter corporation.[6] It argues that the deduction should also be allowed when a company purchases its *own* stock to disengage itself from a burdensome contract which is an adjunct to the stock issue.

The Government responds by relying first upon our decision in John Wanamaker Philadelphia v. Commissioner of Internal Revenue, 139 F.2d 644 (3d Cir. 1943). In that case the corporate taxpayer had issued obligations which were denominated preferred stock. The first question presented in the case was whether preferred stock dividends accrued by the taxpayer on its books were deductible as interest, on the taxpayer's theory that the obligation was in reality debt rather than equity. The court rejected the taxpayer's contention, finding that the taxpayer had failed to establish the existence of a creditor-debtor relationship. The second question presented in the case was whether the taxpayer could deduct the redemption premium it had paid in redeeming the obligations. This court held:

> In view of our conclusion that the preferred stock did not represent indebt-

---

3. In the four fiscal years during which the stock was outstanding, the taxpayer paid $16,000, $18,307, $24,717, and $19,025, respectively. These represented returns on capital of 8, 9, 12, and 9.5 per cent respectively. Because of the varying profit participation figure, the return in any year could be as low as 8 per cent or as high as 15 per cent, depending upon profits.

4. Section 162 of the Code, 26 U.S.C. § 162, provides:

(a) *In General*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business . . . .

5. *See, e. g.*, Cleveland Allerton Hotel, Inc. v. Commissioner of Internal Revenue, 166 F.2d 805 (6th Cir. 1948); Cassatt v. Commissioner of Internal Revenue, 137 F.2d 745 (3d Cir. 1943); Olympia Harbor Lumber Co. v. Commissioner, 30 B.T.A. 114 (1934), aff'd on other grounds, 79 F.2d 394 (9th Cir. 1935).

6. *See, e. g.*, Helvering v. Community Bond & Mortgage Corp., 74 F.2d 727 (2d Cir. 1935); Pressed Steel Car Co., Inc., 20 T.C. 198 (1953), acquiesced in, 1956–2 Cum.Bull. 198.

edness it follows that the premiums paid by the taxpayer . . . in connection with the redemption of its preferred stock were liquidating distributions upon stock and may not be deducted from gross income for those years as items of expense.

139 F.2d at 647–648. The Government contends that this language indicates that a premium paid on the redemption of preferred stock is not deductible as an expense under any theory.

As the Tax Court noted in its memorandum opinion in the instant case, *Wanamaker* was decided under Treas. Reg. § 1.61–12(c)(1), which at the time provided that if a corporation repurchased *bonds* at a price in excess of the issuing price or face value, "the excess of the purchase price over the issuing price or face value is a deductible expense for the taxable year." *See* Roberts & Porter, Inc. v. Commissioner of Internal Revenue, 307 F.2d 745, 746 (7th Cir. 1962). The "expense" in question is now treated as interest under the regulations.[7]

It is true that the bond premium which was deductible pursuant to this regulation was generally viewed at the time as being a business expense deduction under § 162(a) of the Code. Roberts & Porter v. Commissioner of Internal Revenue, 307 F.2d at 746. It can therefore be argued that *Wanamaker*, by rejecting a deduction for preferred stock premiums under a regulation which was itself based on § 162(a), in effect disallowed a deduction under § 162(a) under any theory. Supported by the broad language of the court quoted above, the Tax Court in the instant case relied

upon this interpretation of *Wanamaker* which appears to deny a deduction as an expense under any theory.

We do not believe, however, that *Wanamaker* controls the instant case. The court in that case was not presented with, and did not decide, whether or not an expense deduction under § 162(a) might be permissible under a theory other than that of Treas.Reg. § 1.61–12(c)(1), which was applicable only to debt obligations. The court was not presented with the contention that even if the obligations there at issue were equity, the premium was deductible as a business expense under § 162(a) as a payment to be relieved from a burdensome contract, totally aside from the regulation at issue which provided for a deduction for bond premium. The court cannot therefore be deemed to have decided this contention against the taxpayer, despite the broad language of the opinion.[8]

The Government also relies upon § 311 of the Code, which provides that a corporation may not recognize a loss when it redeems its own stock from a shareholder.[9] It urges that a taxpayer should not be permitted to claim a § 162 deduction for a sum for which § 311 prohibits a capital loss deduction. *See* Roberts & Porter, Inc. v. Commissioner, 37 T.C. 23, 27 (1961), reversed on other grounds, 307 F.2d 745 (7th Cir. 1962).

The force of this contention is somewhat diluted by the case of Five Star Manufacturing Co. v. Commissioner of Internal Revenue, 355 F.2d 724 (5th Cir. 1966), which permits a § 162 deduction in a situation where a capital loss deduction would be arguably prohibited by § 311. In that case, two individuals each

---

7. This provision of the regulation has since been deleted from Treas.Reg. § 1.61–12(c)(1), and inserted in modified form in Treas.Reg. § 1.163–3(c)(1). Section 163 of the Code provides for the interest deduction.

8. Our conclusion as to the intended scope of *Wanamaker* is supported by our examination of the original briefs in that case. At no point did the taxpayer argue that the premium would be deductible even if the obligation involved were deemed to be equity rather than debt.

9. Section 311(a) of the Code provides that "no gain or loss shall be recognized to a corporation on the distribution, with respect to its stock, of . . . property." The term "distribution with respect to its stock" includes distributions made in redemption of stock, Treas.Reg. § 1.311–1(a), 26 C.F.R. § 1.311–1(a). The term "property" includes "money", § 317(a).

owned 50% of the stock of the company, which was in serious straits and near receivership. The presence of one of the individuals as a shareholder was preventing the company from entering into an agreement with an outsider which was necessary for the survival of the company. The company purchased all of that shareholder's stock at judicial sale, and claimed a § 162 deduction for the entire purchase price. The court upheld the deduction, stating that

It can scarcely be held that the payment to [the owner whose stock was purchased] was for the acquisition of a capital asset, but rather one which would permit [the company] again to use assets for income production by freeing its management from unwarranted fetters.

355 F.2d at 727.[10]

We need not decide whether implicit in § 311 is an absolute bar to a § 162 expense deduction for premiums paid when preferred stock is redeemed in order to avoid an allegedly onerous stock purchase contract[11] because we believe that on the facts of the instant case no such deduction is permissible. The taxpayer argues solely that the outstanding preferred contract "reduced our working capital and in essence strangled our corporation as far as growth was concerned. It was an excessive amount of payment and we reviewed it . . . ." While this argument bears a similarity to the rationale upon which Five Star was decided, the facts of this case do not bring it within the ambit of Five Star. Elimination of the preferred stock and the restrictions of the Stock Purchase Agreement was not necessary to the survival of H. & G. Industries, Inc. See Jim Walter Corp. v. United States (M.D.Fla. No. 72–135, August 3, 1973) [73–2 U.S.T.C. ¶ 9682]. Despite the burdensome provisions of the Stock Purchase Agreement, including the obligation to pay "ultra liberal dividends" on the preferred stock, the company's financial position at the time it refinanced in 1967 was such that it was able to obtain a conventional mortgage loan at only 7% interest and a seasonal line of credit at only one-fourth of a per cent above prime.

The stock redemption in this case was no more than an astute business decision to take advantage of improved business and monetary conditions, substituting, at reduced cost, debt obligations for some highly expensive equity obliga-

10. The Government distinguishes the Five Star case by arguing that that case, unlike the instant case, is not within the scope of § 311 and thus not controlled by it. The distinction is said to rest upon Treas.Reg. § 1.311–1(e), which limits the scope of § 311 to transactions involving the corporation-shareholder relationship, as distinguished, for example, from a debtor-creditor relationship in which a shareholder surrenders his stock to the corporation in payment of a debt owed the corporation. While we express some doubt that Five Star is distinguishable from the instant case in this respect, we need not decide the question in light of our disposition of this case.

11. There is a further reason, not pressed by the Government, which might prohibit the deduction of a preferred stock redemption premium whenever the reason for the redemption were to avoid allegedly onerous future dividend obligations, as opposed to other obligations, imposed by the stock purchase contract. In the cases involving payments to be relieved of onerous business contracts, see note 6 supra, the corpora-

tions' buy out payments are substitutes for the payments which would otherwise have to be made pursuant to the allegedly onerous contract itself. The latter payments would be the typical kind of deductible business expenses under § 162, and so permitting the buy out payment to be deducted would be simply substituting one deduction for another.

Preferred stock dividends are clearly not deductible under any section of the Code, however. See, e. g., Wanamaker, supra. If a redemption premium paid to avoid future dividend obligations were deductible, the taxpayer would have the considerable advantage of being able to deduct a payment made as a substitute for non-deductible dividend payments. This goes beyond the cases relied upon by the taxpayer. The problem might not arise if the allegedly onerous burden represented by the preferred stock purchase contract was based solely upon provisions of the contract other than the dividend obligation. Payments made pursuant to other provisions of the contract might be deductible business expenses as they were incurred.

tions. As succinctly stated in the taxpayer's petition to the United States Tax Court for redetermination of the deficiencies asserted by the Commissioner of Internal Revenue:

Economic circumstances, including the current interest rates made it a prudent, ordinary and necessary business decision to pay off Investment [SBIC] in October 1967 . . . .

Furthermore, every non-required redemption of preferred stock is presumably made on the expectation that for one valid reason or another the issuing corporation would be better off without the outstanding preferred. Permitting a § 162 business expense deduction in such a situation would completely undercut the specific prohibition of loss deductions under § 311.[12] We therefore do not reach the question of whether a § 162 deduction limited to more oppressive corporate circumstances than those presented by the instant case would be consistent with § 311.

The decision of the Tax Court will be affirmed.

---

12. An ordinary expense deduction under § 162, of course, would be considerably more favorable to a taxpayer than would even a capital loss deduction prohibited by § 311. *Compare* § 161 with §§ 1211, 1212.