United States Court of Appeals,

Fifth Circuit.

No. 93-2737.

UNITED STATES of America, Defendant-Appellee,

v.

HOUSTON PIPELINE CO., f/k/a Houston Natural Gas, Plaintiff-
Appellant.

Nov. 7, 1994.

Appeal from the United States District Court for the Southern
District of Texas.

Before WISDOM, DAVIS and DUHÉ, Circuit Judges.

WISDOM, Circuit Judge:

The plaintiff/appellant, Houston Pipe Line Company, successor in interest to Houston Natural Gas Corporation ("HNG"), appeals from the district court's grant of summary judgment denying HNG's claim for a tax refund totalling $47,879,276. Because there is no genuine issue of material fact and the defendant/appellee, United States, is entitled to judgment as a matter of law, we AFFIRM.

I

The facts are not in dispute. In January 1984, HNG became the target of a hostile takeover attempt by a wholly owned subsidiary of Coastal Corporation ("Coastal"). Coastal made a tender offer to purchase 45 percent of HNG's outstanding common stock. This 45 percent share, added to the 5.05 percent equity interest Coastal already held in HNG, would have made Coastal the majority shareholder in HNG.

The board of directors of HNG found the offer unappealing in

three respects.  First, HNG had doubts about Coastal's financial soundness.  Second, Coastal offered to buy only enough shares to acquire control of HNG and made no provisions for the nearly 50 percent of HNG shares not included in the offer.  Third, HNG was concerned about prohibitions on Coastal's ability to operate in South Central Texas, an important gas market for HNG.  For these and other reasons, HNG's board of directors concluded that Coastal's offer was not in the best interests of HNG's shareholders and rejected the offer.

In February 1984, to repel the takeover, HNG devised a plan to make the corporation unattractive to Coastal by crippling itself financially.  First, HNG made a counteroffer to purchase all of the outstanding shares of Coastal's common stock for a price of $875.6 million.  Second, HNG made a self-tender offer to buy up to 19 million shares of its own stock for $1.3 billion.  HNG obtained a bank commitment of $1.8 billion to finance the plan.  Had it completed both proposed transactions, HNG would have devastated itself financially;  HNG's debt would have escalated from $437 million to $3.61 billion, and its stockholders' equity would have fallen from more than $1.4 billion to less than $85 million.

Almost three weeks after its original bid, Coastal changed its mind.  It proposed to withdraw its offer on the condition that HNG purchase Coastal's 5.05 percent stock interest in HNG.  On February 13, 1984, HNG redeemed the 2.075 million shares held by Coastal for $124.53 million.

In its 1984 tax return, HNG did not claim a deduction for the

$124.53 million it paid to redeem its stock from Coastal.  It was later, after the Internal Revenue Service conducted an examination of HNG's returns for the 1984 year and the short year ending June 7, 1985, that HNG asserted it was entitled to deduct the $124.53 million it paid to redeem its stock from Coastal as an ordinary and necessary business expense under § 162(a) of the Internal Revenue Code.  The Service refused to allow the deduction, and on September 15, 1992, HNG filed suit in district court, seeking a refund of $47,879,276.

Stock redemptions, as a general rule, are characterized as capital transactions,[1] and the purchase price of a stock redemption is not deductible.[2]  The plaintiff HNG cites *Five Star Manufacturing Co. v. Commissioner of Internal Revenue*[3] as an exception to this general rule.  Under *Five Star,* the plaintiff alleges, stock redemption costs incurred in the face of an outside threat to the survival of a corporation are deductible as ordinary and necessary business expenses.  The plaintiff contends that Coastal's hostile takeover attempt created "dire and threatening" circumstances that necessitated the repurchase of its own stock in order to ensure the viability of the corporation as a going concern.

The government argued that the amount the plaintiff paid to

---

[1]*Woodward v. Commissioner of Internal Revenue,* 397 U.S. 572, 575, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970).

[2]*Markham & Brown, Inc. v. United States,* 648 F.2d 1043, 1045 (5th Cir.1981).

[3]355 F.2d 724 (5th Cir.1966).

3

redeem its own stock from Coastal was a capital expenditure, therefore not deductible under § 162(a), and moved for summary judgment.

The district court concluded that the facts of this case do not come within the holding of *Five Star,* because the plaintiff's stock redemption was not necessary to the survival of the company, and granted the government's motion for summary judgment.[4]

The plaintiff appeals on two grounds: first, that the district court erred in granting summary judgment on a factual ground not raised by the government in its motion for summary judgment; and second, that the facts of this case fall within the *Five Star* exception that allows a taxpayer to deduct the cost of redeeming shares of its stock where the redemption is necessary to the survival of the company.

## II

We review a grant of summary judgment *de novo,* "including the question whether the court provided the notice required by Fed.R.Civ.P. 56."[5] We take all facts and inferences in the light most favorable to the non-moving party,[6] and if no rational trier of fact could possibly find for the non-moving party, summary

---

[4]*Houston Pipe Line Co. v. United States,* 838 F.Supp. 1160, 1163 (S.D.Tex.1993).

[5]*Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.,* 992 F.2d 1398, 1401 (5th Cir.1993).

[6]*Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

4

judgment is appropriate.[7]

A.

The plaintiff's first argument on appeal challenges the district court's grant of summary judgment because the district court based its decision on facts that the government did not raise specifically in its motion for summary judgment. In its motion, the government made two arguments: first, that *Five Star* is no longer good law, because the case employs the old "primary purpose" rule that the Supreme Court has repudiated in cases decided after *Five Star.* In the alternative, the government argued that the *Five Star* decision is distinguishable from the undisputed facts of this case, because the parties in *Five Star* agreed that § 311 of the Internal Revenue Code did not apply, whereas no similar agreement exists here.

Because the district court distinguished *Five Star* on its facts, the court found it unnecessary to address the continued viability of *Five Star.* The district court concluded that the facts of this case do not fall within the holding of *Five Star,* because the plaintiff's stock redemption was not necessary to the survival of the company. Stated simply, the government argued that *Five Star* was distinguishable for one reason, and the district court found *Five Star* distinguishable for another. The issue we must address is whether this divergence requires reversal of the district court's grant of summary judgment.

Rule 56 of the Federal Rules of Civil Procedure requires a

_____

[7]*Resolution Trust,* 992 F.2d at 1401.

court to consider the whole record when ruling on a motion for summary judgment. The record includes "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits...."[8] Although a court may not weigh the evidence to determine its truth nor draw inferences from the facts,[9] Rule 56 clearly permits a court to consider the whole record, and "not just the portion highlighted by the motion itself."[10] Further, "the district judge is not compelled to limit the basis for a summary judgment to those facts listed in the motion for summary judgment."[11] The plaintiff, however, contends precisely the opposite.

The plaintiff contends that the district court erred in resting its decision on a factual basis not specifically argued by the government in its motion for summary judgment. The law does not support the plaintiff's contention. The rule in the Fifth Circuit is clear: "the judge is free to grant summary judgment on the basis of any facts shown by competent evidence in the record."[12] The record is replete with evidence pertaining to the issue of whether the plaintiff's stock redemption was necessary to the

---

[8]Fed.R.Civ.P. 56(c).

[9]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986).

[10]*Ramirez v. Burr,* 607 F.Supp. 170, 173 (S.D.Tex.1984), *citing Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1984).

[11]*Daniels v. Morris,* 746 F.2d 271, 276 (5th Cir.1984).

[12]*Id.*

survival of the company.  That issue is critical to the plaintiff's case.  Indeed, the great majority of the documents in the record address the issue because it is the very basis of the plaintiff's claim for relief.

The law allows a district judge to grant summary judgment on the basis of facts shown by competent evidence in the record, even if those facts are not highlighted in the motion for summary judgment.  We therefore conclude that the district judge did not err in granting summary judgment on a factual basis different from the one advanced by the government in its motion.

B.

The plaintiff's second argument on appeal alleges that by granting the government's motion for summary judgment on a factual basis not raised by the government in its motion, the district court deprived it of adequate notice and a meaningful opportunity to respond.  Rule 56 requires a motion for summary judgment to be served at least 10 days before the time fixed for the hearing.[13] The purpose of the notification requirement is to allow the nonmoving party time to place all evidence supporting its position into the record and to put its best foot forward.[14]  Our inquiry is whether the district court deprived the plaintiffs of adequate notice by granting the government's motion for summary judgment for a reason different from the one advanced by the government in its

_____

[13]Fed.R.Civ.P. 56(c);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

[14]*NL Industries, Inc. v. GHR Energy Corp.,* 940 F.2d 957, 965 (5th Cir.1991).

7

motion.

The plaintiffs liken their case to *John Deere v. American National Bank,*[15] where the district court granted summary judgment on a theory never advanced by either party. In *John Deere,* a primary lienholder, John Deere, brought suit against a second lienholder, American National Bank, alleging that the Bank had foreclosed on, and sold, the collateral without notice to John Deere. The Bank moved for summary judgment on the ground that it had sold the collateral in accordance with a Texas state court judicial sale and that the state-court judgment operated as *res judicata* against John Deere. The district court granted the Bank's motion, not on a *res judicata* theory, but instead on the theory that John Deere had not presented any evidence that it had suffered damages arising from the Bank's actions. We reversed, because the theory of failure to show damages "certainly was not raised by the Bank in a manner that would be sufficient to put John Deere on notice that failure to present evidence of damages could be grounds for summary judgment."[16]

We fail to see the parallel between the plaintiff's case and *John Deere.* In *John Deere,* the district court granted summary judgment on the basis of a tangential theory that neither party asserted. The movant's brief in support of its motion for summary judgment "relie[d] solely on a *res judicata* argument."[17] The

---

[15]809 F.2d 1190 (5th Cir.1987).

[16]*Id.* at 1191.

[17]*Id.* at 1192.

nonmoving party in *John Deere* had no notice of the need to introduce evidence of damages in order to withstand a motion for summary judgment, and summary judgment was therefore inappropriate.

The plaintiff in this case alleges to have had no notice that the theory of their case could arise in the district court's consideration of the government's motion for summary judgment. The plaintiff's argument is unpersuasive. The government's motion for summary judgment states, "the *Five Star* decision is distinguishable from the undisputed facts of this case and provides no exception available to HNG."[18] The plaintiff's refund claim was premised on the applicability of *Five Star* and the plaintiff knew that it needed to introduce sufficient evidence to bring it within the holding of the case. The procedural inequity involved in *John Deere* is not present here. The record before us demonstrates that the plaintiff had adequate notice and every opportunity to present its case. We therefore conclude that the district court did not err in granting summary judgment based on facts not specifically alleged in the government's motion for summary judgment.

### III

We turn now to the merits of the plaintiff's case. The issue is whether the plaintiff may reduce its tax liability for the 1984 year by taking a current deduction for the $124.53 million it paid to redeem its stock from one of its shareholders.

The general rule is undisputed: when a corporation redeems its own stock, it is a capital transaction, and the corporation may

---

[18]Record at 104.

not deduct the amount spent for the redemption as a business expense under § 162(a) of the Internal Revenue Code.[19]

The plaintiff argues that it falls within the exception the general rule recognized by the Fifth Circuit in *Five Star Manufacturing Co. v. Commissioner of Internal Revenue.*[20] In the particular circumstances presented by the facts in *Five Star,* we allowed a taxpayer to deduct the cost of redeeming shares of its stock because the redemption was vital to the survival of the company. The plaintiff argues that it falls within the *Five Star* exception and may take a current deduction for the purchase price of the stock it redeemed from Coastal.

The government contends that the amount paid by the plaintiff to redeem its stock was a capital expenditure and therefore not deductible. The government makes two arguments in its motion for summary judgment. First, the government asks us to overrule *Five Star,* because, the government alleges, *Five Star* was decided under the "primary purpose" test, a test the Supreme Court has repudiated in cases decided after *Five Star.* In the alternative, the government contends that the facts of this case do not fit the exception recognized in *Five Star.*

The district court found that *Five Star* was distinguishable on its facts and granted the government's motion for summary judgment. Because *Five Star* was inapplicable, the district court

---

[19]*Woodward v. Commissioner of Internal Revenue,* 397 U.S. 572, 575, 90 S.Ct. 1302, 1305, 25 L.Ed.2d 577 (1970); *Jim Walter Corp. v. United States,* 498 F.2d 631, 638 (5th Cir.1974).

[20]355 F.2d 724 (5th Cir.1966).

10

found it unnecessary to address the viability of *Five Star.* We agree with the district court and affirm the grant of summary judgment in favor of the government.

The record before us demonstrates that the plaintiff's case does not fit within the *Five Star* exception. In *Five Star,* a patent holder, by license agreement, gave to Kincade and Smith the exclusive right to manufacture, use, and sell a certain car heater. Kincade and Smith owned 50 percent each of Five Star Manufacturing Company, and they transferred the license to Five Star. The company began to draw profit selling the heaters, but Smith was delinquent in his management of Five Star. He drew heavily from the company's treasury and Five Star paid no royalties to the patent holder. The patent holder cancelled the license, attached two-thirds of the company's inventory of finished goods, and obtained a judgment for unpaid royalties. The company had no working capital and no credit. The patent holder agreed to renew the license and release his hold on the corporate assets only if Five Star redeemed Smith's 50 percent share of the corporate stock and eliminated Smith from the enterprise.

Five Star had no choice but to redeem Smith's stock; liquidation was the alternative. This Court allowed Five Star to deduct its redemption payment to Smith, because the payment was unquestionably a "necessary expense."[21] In those circumstances, we stated, it could "scarcely be held that the payment to Smith was for the acquisition of a capital asset, but rather one which would

---

[21]*Five Star,* 355 F.2d at 727.

11

permit Five Star again to use assets for income production by freeing its management from unwarranted fetters."[22]

Later cases stressed the extraordinary factual circumstances that warranted the *Five Star* holding. In *Jim Walter Corp. v. United States,*[23] this Court found the *Five Star* exception inapplicable to the facts of the case, and stated that *Five Star* is limited to situations where the redemption expenditure is "necessary to the taxpayer's survival." In *Markham & Brown, Inc. v. United States,*[24] we again found *Five Star* inapplicable to the facts of the case, and restated the *Jim Walter* holding that the *Five Star* rule applies only to situations where the expenditure is "made to save the corporation from dire and threatening circumstances."[25]

The plaintiff in this case contends that Coastal's takeover attempt created "dire and threatening circumstances" that allow it to deduct the cost of the stock redemption as an ordinary and necessary business expense. The district court could discern no such threat, and neither can we.

Unlike HNG, the Five Star company faced extinction if it did not redeem the shares. The license was Five Star's only income-producing asset. The company had no working capital and no credit. Without the license, the company, without question, would

---

[22]*Id.*

[23]498 F.2d 631, 639 (5th Cir.1974).

[24]648 F.2d 1043, 1046 (5th Cir.1981).

[25]*Id.* at 1045.

have gone out of business. In contrast, the plaintiff corporation was a profitable corporation; it was able to procure a $1.8 billion bank commitment to finance its proposed plan to fend off the Coastal takeover. *Five Star* does not apply to profitable, solvent corporations such as the plaintiff HNG.

The district court found that "HNG's survival as a going concern was not threatened in any way."[26] The plaintiff maintains that it would have faced financial ruin if Coastal had effectuated the takeover, and argues that a takeover by Coastal would have created the "dire and threatening circumstances" that warrant application of the *Five Star* exception. We, like the district court, are unconvinced. First, the plaintiff can speculate only as to what would have come of a takeover by Coastal. Presupposing "dire and threatening circumstances" to come is very different from actually enduring dire and threatening circumstances. Further, we agree with the district court's finding that although a corporation may change after it is taken over, it "continues to survive at the will of the shareholders and management, unlike Five Star which could not have continued to manufacture the very product it was in the business of manufacturing without a renewed licensing agreement."[27]

Finally, in *Five Star* it was a third party, the patent holder, who gave the company an ultimatum: redeem the shares or liquidate

---

[26]*Houston Pipe Line Co. v. United States,* 838 F.Supp. 1160, 1162 (S.D.Tex.1993).

[27]*Id.* at 1162-63.

13

the company.  From these facts comes the *Five Star* exception: where the redemption is absolutely necessary to the survival of the company, a deduction may be allowed.[28]  In this case, the plaintiff had the option to redeem the shares or allow Coastal to take over the corporation.  It was the plaintiff's choice to pay $124.53 million to redeem the shares owned by Coastal.  The redemption was not necessary to the corporation's survival as a going concern, and *Five Star* does not provide the plaintiff with a legal basis for its claimed deduction.

Because *Five Star* is inapplicable to this case, it is unnecessary to consider the viability of *Five Star.*  The district court's grant of summary judgment is AFFIRMED.

---

[28]*Markham & Brown,* 648 F.2d at 1045;  *Jim Walter,* 498 F.2d at 639;  *Five Star,* 355 F.2d at 727.

14