IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-20642

Summary Calendar
_____


THEODORE HAYNES, JR,

                    Plaintiff-Appellant,

          v.

PENNZOIL COMPANY,

                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-2217)
_____
March 31, 1998

Before KING, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-appellant Theodore Haynes, Jr. appeals the

district court's grant of summary judgment in favor of defendant-

appellee Pennzoil Company on his claims of race discrimination

and retaliation.  We reverse the judgment of the district court

---

     [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

and remand the case for further proceedings consistent with this opinion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff-appellant Theodore Haynes, Jr. began working for defendant-appellee Pennzoil Company's (Pennzoil) Treasury Department in March 1985.  Between March 1985 and May 1990, Pennzoil promoted Haynes four times and gave him seven pay raises.  In addition, during that period, Pennzoil paid Haynes's tuition and related expenses.  In December 1988, Haynes earned a B.B.A. in Accounting from the University of Houston.

In the summer of 1989, Haynes applied for tuition reimbursement so that he could attend paralegal school.  Pennzoil denied his request because its educational assistance policy required that the course of study be related to the employee's position within the company.  In the summer of 1991, Haynes requested an educational leave of absence so that he could attend law school.  Pennzoil denied his request on the grounds that its educational leave policy stated that "[s]uch leaves should be for advanced degrees (beyond the bachelor level) associated with the employee's work-related activities and are subject to management approval."  In addition, Pennzoil's policy permitted an educational leave to extend for a maximum of two years.  After Pennzoil denied his request on the grounds that law school was not related to his work as an accountant, Haynes stopped going to work and began attending law school.  Because he failed to submit

2

a letter of resignation, which he was instructed to do, his file reflected that he was terminated for failing to report to work.

In January 1991, Haynes filed an EEOC complaint alleging that Pennzoil denied his request for an educational leave because of his race. On April 28, 1992, the EEOC determined that Pennzoil's decision had not been discriminatory. In July 1992, Haynes filed suit against Pennzoil, claiming that it had discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, and of 42 U.S.C. § 1981. In 1993, the parties agreed to a settlement and the suit was dismissed. The settlement included, among other things, Pennzoil's reinstatement of Haynes to his former position with credit for continuous service. In addition, the settlement acknowledged that Pennzoil did not "undertake any obligation to assign [Haynes] to or consider him for any position in Pennzoil's legal department."

Haynes returned to Pennzoil's accounting department in August 1993. On November 18, 1993, Haynes began inquiring about legal positions within Pennzoil. Pennzoil responded that it would post "openings for entry-level legal positions (defined as jobs that require a law degree and license) in the Legal Department." From that time until Haynes's termination, Pennzoil neither posted for nor hired any attorneys that it considered to be "entry-level." However, in the spring of 1995, Pennzoil did hire two attorneys--one was a gas marketing attorney with over

3

fifteen years of experience and the other was an oil and gas attorney with approximately three years of experience.

Pennzoil claims that in October 1995, it began a program of streamlining its corporate structure to cut costs. The program required the elimination of over 600 jobs and resulted in the merger of Haynes's group and another group. The management of the new group determined that the department should be reduced by two accountants. Pennzoil claims that in order to accomplish this reduction, it ranked the employees in the department and discharged the two lowest ranked employees, one of whom was Haynes.

On July 5, 1996, Haynes filed this lawsuit, alleging, among other things, that Pennzoil discriminated against him by not considering him for the two attorney openings and by later firing him. On October 4, 1996, Pennzoil moved for partial summary judgment on several of Haynes's claims, arguing that they had been settled and released in his previous lawsuit.

The district court held hearings on November 14 and December 17, 1996, to discuss Pennzoil's motion for partial summary judgment. At the hearings, the district court indicated its willingness to go beyond the scope of the summary judgment motion and eliminate any issues in the case for which there existed no genuine issues of material fact. On July 3, 1997, the district court entered summary judgment in favor of Pennzoil on all claims and dismissed the case.

4

## II. SUMMARY JUDGMENT STANDARD

"We review a grant of summary judgment <u>de novo</u>, 'including the question whether the court provided the notice required by Fed. R. Civ. P. 56.'" <u>United States v. Houston Pipeline Co.</u>, 37 F.3d 224, 226-27 (5th Cir. 1994) (quoting <u>Resolution Trust Corp. v. Sharif-Munir-Davidson Dev. Corp.</u>, 992 F.2d 1398, 1401 (5th Cir. 1993)). We consult the applicable law in order to ascertain the material factual issues, and we then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmovant. <u>King v. Chide</u>, 974 F.2d 653, 656 (5th Cir. 1992). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. DISCUSSION

Haynes raises several points of error on appeal. First, he contends that the court relied on inadmissible evidence and that it was biased against him in its consideration of the case. Second, he argues that the court erred in failing to permit him to conduct an adequate amount of discovery. Finally, he asserts

5

that the court failed to consider his retaliatory discharge claim.[1]  We address each of these claims in turn.

Haynes first argues that the district court considered inadmissible evidence offered by Pennzoil.  Haynes bases this complaint on the district court's statement in the December hearing that if Haynes required the authentication of certain documents[2] submitted by Pennzoil without any reason for questioning their authenticity then the court would assess the resulting costs against him if the documents proved to be authentic.  Pennzoil responds that the district court was justified in giving Haynes such a warning and notes that he remained free to require authentication of the documents and to appeal any resulting allocation of costs.

---

[1]  Haynes also contends that the district court's sua sponte decision to grant summary judgment on all of his claims was improper because he did not receive adequate notice of the court's intention to do so.  Because we conclude that the district court's grant of summary judgment was improper for other reasons, we need not address this issue.

[2]  Pennzoil submitted the documents in question in response to the district court's request for information on Haynes's termination and his not being considered for the two attorney positions.  The documents included the following:  (1) job descriptions for the two available attorney positions; (2) information forms submitted by the two successful applicants for the positions and by Haynes; (3) internal Pennzoil newsletters detailing the reduction-in-force; (4) several documents involving Haynes's termination, including a chart showing the rankings of accounting personnel and an evaluation of Haynes.

It is well-settled that, "[t]o be admissible [as summary judgment evidence], documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2722, at 59-60 (2d ed. 1983) (footnotes omitted). The documents submitted by Pennzoil in its supplement to its motion for summary judgment were not authenticated. Pennzoil argues that Haynes's attorney's colloquy[3] with the district court about this issue resulted in

---

[3]    Lopez and the district court engaged in the following exchange on this issue:

MR. LOPEZ:  All we have is, you know, this unverified sheet of paper purporting to show the rankings.  I have no idea what it is --

THE COURT:  I'll be happy to have somebody from Pennzoil verify it, if it turns out not to be any change, then you pay the cost of all that.  There is no sense in going through the empty exercises.  Mr. Smith and the lawyers from Pennzoil and Pennzoil itself are here representing.  These are the documents from Pennzoil.

MR. LOPEZ:  All I'm asking is they comply with the rules.

THE COURT:  And if you want them to comply pointlessly to what you have no reason to believe is necessary, then I'll assess the cost.  This is not a game.  This is a legitimate purpose.  You tell me what's wrong with this printout. . . .

        . . .

THE COURT:  . . . you feel free, if you really want to depose any of the records custodian to see whether they

7

its being waived, claiming that Haynes should have requested the authentication and then later appealed any cost shifting imposed by the district court. We disagree.

The requirement of authentication is subject to waiver if it is not raised before the trial court by the opposing party. See United States v. "Monkey", 725 F.2d 1007, 1011 n.4 (5th Cir. 1984) ("Objections to authenticity . . . are waived by a failure to raise them in the District Court, where the [opponent] could have remedied any technical deficiencies."); 10A WRIGHT ET AL., supra, § 2722, at 60 ("As is true of other material introduced on a summary judgment motion, uncertified or otherwise inadmissible documents may be considered by the court if not challenged."). The purpose of the requirement that objections be raised before the district court is to prevent the unnecessary appeal of an issue that could have been cured at the district court and to insure that the district court has had an opportunity to rule on the issue. In this case, Haynes's attorney clearly objected to the consideration of the unauthenticated documents offered by Pennzoil, and at no time after raising the authentication issue did he indicate that he wished to waive the requirement.

Contrary to what the district court's discussion of the issue implies, it is the burden of the party offering documentary evidence to provide proof of its authenticity; it is not the

produced this from their records or not.

burden of the opposing party to prove that the evidence is not authentic. See United States v. Sutherland, 656 F.2d 1181, 1201 (5th Cir. Unit A 1981). Moreover, the error in this case was not harmless. The district court's Opinion on Judgment relies on the document containing the employee rankings as the primary evidence that Pennzoil's decision to terminate Haynes was based on a valid business reason and not on illegal discrimination. In addition, the Opinion indicates that the district court relied on the application forms submitted by the two new attorneys in disposing of Haynes's claim that he should have been considered for and was qualified for the legal positions. These documents were not competent summary judgment evidence. As Pennzoil introduced no competent summary judgment evidence to rebut Haynes's claim of discrimination, entry of summary judgment was not proper.[4]

Haynes next contends that the district court erred in not allowing him adequate time for discovery before granting summary judgment and in conducting its own discovery on behalf of

---

[4] Haynes contends that the admission of the unauthenticated documents demonstrated that the district court was biased against him. He further contends that, throughout the proceedings, the district court "exhibited an unreasoning [sic] prejudice against [his] claims and a bias for the company," and he suggests that some of the statements by the district court regarding the racial characteristics of Haynes's department also demonstrate that bias. We disagree. The majority of the statements to which Haynes refers have been taken out of context. When read in the context of a relevant discussion of the racial composition of the department, the comments in question, although perhaps insensitive, do not suggest that the court was biased against Haynes. Thus, we decline to reassign the case to a different judge on remand.

9

Pennzoil.  This argument lacks merit.  The district court did not grant summary judgment until July 3, 1997, more than six months after the December hearing in which Haynes requested additional discovery.  Haynes points to no specific material that the district court prevented him from discovering or that he was lacking when the district court entered the judgment.[5]  Moreover, the fact that the district court directed Pennzoil to provide certain documents to Haynes does not indicate that the court "conducted its own discovery and sought to prevent [Haynes] from obtaining discovery."

Lastly, Haynes contends that the district court failed to address his claim of retaliatory discharge.[6]  In order to establish a prima facie case of retaliation in violation of Title VII, the plaintiff must establish three elements:  (1) "the plaintiff must have engaged in protected participation or opposition;" (2) "the employer must have imposed upon the plaintiff some adverse employment action;" and (3) "the employer must have taken the adverse employment action because the plaintiff engaged in protected activity (i.e., the employer must

---

[5]    Indeed, Haynes does not dispute Pennzoil's contention that, shortly after the December hearing, Pennzoil responded to the discovery requests that were outstanding and that it responded to his subsequent discovery request on April 18, 1997.

[6]    In its Opinion on Judgment, the district court addressed Haynes's termination, but did not mention the retaliation issue, instead focusing only on the reduction-in-force.

10

have had a retaliatory motive)."  2 BARBARA LINDEMANN & PAUL GROSSMAN,

EMPLOYMENT DISCRIMINATION LAW 672 (3d ed. 1996) (footnotes omitted);

see also Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th

Cir. 1992).

Haynes filed a discrimination complaint with the EEOC (a

protected participation), and Pennzoil fired him (an adverse

employment action) after he filed the complaint (a temporal

causal connection to the protected activity that permits an

inference that Pennzoil had a discriminatory motive).  Thus,

Haynes established a prima facie case of retaliation, and the

burden was on Pennzoil to produce evidence that it had a

nonretaliatory reason for terminating him.  LINDEMANN & GROSSMAN,

supra, at 675.  As Pennzoil's evidence of nonretaliatory reasons

for Haynes's termination (i.e., the reduction-in-force and his

low ranking among accountants) was not authenticated and was

therefore inadmissible, it has failed to rebut Haynes's prima

facie case of retaliation.[7]  On remand, the district court is

instructed to give due consideration to Haynes's claim of

retaliatory discharge.

### IV.  CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the

---

[7]    Pennzoil contends that Haynes has waived his
retaliation claim by failing to raise it at either of the
conferences.  We disagree.  The retaliation claim is one aspect
of the termination claim, which was clearly raised and preserved
at the conferences.

11

district court, and we REMAND the case for further proceedings consistent with this opinion on the issues of (1) Haynes's termination (including his retaliatory discharge claim) and (2) Pennzoil's failure to consider Haynes for an attorney position. Costs shall be borne by Pennzoil.